No. 40,048

EARL L. BORCHARDT, *Appellant,* v. THE CITY OF LEAWOOD, KANSAS, a Municipal Corporation, EMPLOYERS MUTUAL CASUALTY COMPANY, *Appellees.*

(290 P. 2d 811)

Opinion filed December 10, 1955.

*Joseph Cohen,* of Kansas City, argued the cause, and *Charles S. Schnider, John E. Shamberg, Thomas E. Joyce, Joseph P. Jenkins, Norma Braly,* and *Harold K. Wells,* all of Kansas City, and *Charles W. Cook, Jr.,* of Kansas City, Missouri, were with him on the briefs for the appellant.

*Leonard O. Thomas*, of Kansas City, argued the cause, and *Arthur J. Stanley, Jr., J. E. Schroeder, Lee E. Weeks,* and *J. D. Lysaught,* all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was a workmen's compensation case. The workmen's compensation commissioner made an award to claimant. On appeal, the trial court accepted and adopted the stipulations of the commissioner and his summary of the evidence, but made findings and an award of its own, and entered judgment thereon for claimant, from which he appeals.

Appellant Earl L. Borchardt will be referred to as claimant, and appellees the City of Leawood and its insurance carrier, Employers Mutual Casualty Company, as defendants, or City.

The sole question involved in this appeal is the method or formula to be adopted in computing the amount of compensation due claimant for temporary total disability and permanent partial disability.

The facts are not in dispute. The parties stipulated that claimant met with personal injury by accident February 13, 1954, arising out of and in the course of his employment with the City, and that notice and written claim for compensation was made as required by the workmen's compensation act; that compensation had been paid by defendants in the sum of $84 at the rate of $7 per week; that medical assistance had been furnished by defendants. So much of the evidence as is pertinent to the issue involved may be briefly stated as follows: Claimant, a resident of the City of Leawood, was a regularly employed accountant of the Kansas City Power & Light Company at a salary of $515 per month. Along with some other public spirited citizens of that rapidly growing municipality, he volunteered to do police duty for the City in his spare time. In connection with his work as a volunteer police officer, he agreed with the City that for each evening devoted to his work as a volunteer policeman he was to receive $3, irrespective of the number of hours worked and, if he so desired he could devote his spare time during the day to volunteer police work, but would receive no pay for such daytime services, irrespective of the number of hours on duty. However, some day duty was expected of him. He had been a volunteer policeman for the City for approximately two years. When on duty he performed the same work as a regular full-time police officer who received a salary of $275 or more per month.

He usually worked at night and would accompany a full-time police officer in patrol work, or whenever the full-time officer was off duty, he would accompany another volunteer officer. There were no set hours for the evening work, nor were there any regular predetermined evenings that claimant was obliged to work. It was purely voluntary, and he worked such evenings as he chose. His hours were usually 7:00 to 9:00, or 7:00 to 10:00 p. m. For each such evening service he would receive $3. If he worked later than 10:00 p. m. he would receive no further compensation. It was customary for volunteer officers, such as claimant, to work for the City whenever they chose to do so. The daytime work was the same type as the nighttime, with the exception that no compensation was paid therefor. The daytime work was performed without any direction. The amount of compensation he was entitled to receive at the end of the month was based on the number of evenings worked, multiplied by $3. The police work engaged in by claimant during the daytime was referred to by the chief of police as strictly voluntary and without pay. On February 13, 1954, at 1:30 p. m., claimant was attempting to apprehend a speeder and, while so doing, his car swerved to the side of the road and he was injured. It was not questioned that he suffered a temporary total disability for a period of ten weeks, followed by a twenty per cent permanent partial disability to the body as a whole.

After reviewing the record the trial court rejected the commissioner's findings and award and made the following findings:

"The court finds and adjudges that the relationship of employer and workman existed on February 13, 1954, at or about 1:30 P. M., the date of the accidental injury to claimant; that the parties were governed by the Kansas Workmen's Compensation Act; that the respondent was insured by the Employers Mutual Casualty Company; that claimant was temporarily totally disabled from February 13, 1954 to May 1, 1954, or for a period of Ten (10) weeks compensable temporary total disability; that thereafter he has suffered and will suffer a twenty (20) per cent permanent partial disability to the body as a whole.

"Claimant was a volunteer patrolman. At the time he was injured he was working voluntarily during the daytime and had not been called into service by the chief of police or other city official for duty at that particular time. All volunteer patrolmen, including claimant, were ordered to do some daytime service for the City of Leawood, but were not paid anything extra for it. Claimant was not a part time employee. His rate of wages was not fixed on an hourly rate. None of the evidence referred to an hourly rate and none was involved. Claimant's wages under the contract were fixed at $3.00 per night

for which he was required to serve a minimum of from 7:00 P. M. to 10:00 P. M. while riding with one of the paid full time patrolmen performing policemen and patrol duties. All of claimant's daytime work was limited to patrol duty and writing of tickets for traffic violations. The contract did not require claimant to serve on a fixed number of nights per week, and as to which nights and the number of nights he worked he was a volunteer. The contract did not fix any definite time nor amount of daytime work, though some was required. For additional work, either in the daytime or in the nighttime, he received no additional pay. The $3.00 per day covered all work performed by claimant under the contract of hiring. All the work of the claimant was under the contract of hiring. The $3.00 per day was the minimum and the maximum for one day's work. The wage or money rate at which claimant's services were recompensated was the sum of $3.00 per day. The weekly wage was $15.00 and he should be compensated accordingly. The compensation for the ten (10) weeks of temporary total disability is $9.00 per week or a total of $90.00. The claimant is entitled to compensation for the partial permanent disability of twenty (20) per cent to the body as a whole at the rate of $1.80 per week for 405 weeks.

"The sum of $84.00 has been paid to claimant on the temporary total disability."

The trial court made its award in the action in accordance with the findings and entered judgment accordingly.

The parties contend the paramount feature of the wage aspect is the fact that at the time of claimant's accidental injury on the afternoon of February 13, he was not receiving any wage at all. He received nothing for his daytime work. The $3 was payable to him only if he worked an evening. Claimant, therefore, contends that as a volunteer or part-time policeman, injured while performing his duties, he was entitled to compensation based upon the earnings of a full-time policeman of the City. Defendants contend that our statutes contemplate that compensation paid to employees is to be based upon wages paid, and that if no wages are due or payable, no compensation is payable other than medical expense and the minimum of $7 per week during the period of temporary total disability. (G. S. 1953 Supp., 44-510.)

G. S. 1949, 44-511, provides, in pertinent part, that whenever in the act the term "wages" is used it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, and in any case the weekly wage shall be found by multiplying the daily wage by five, or if the employee worked the greater proportion of the week regularly, then according to the customary number of working days constituting an ordinary week.

It is apparent from the plain wording of the statute that the term "wages" means the money rate at which the service rendered is paid under the contract of hiring. It is true, claimant was injured in the daytime for which he received no extra compensation. However, his contract with the City for wages was $3 per night, and as a part of that contract he agreed to work some days as a volunteer policeman without any further compensation. The $3 covered all work performed by claimant under the contract.

Since claimant, under contract, agreed to work for a specified wage, he cannot have his pay rate increased for compensation purposes, merely because regular policemen might be getting a greater rate of pay for full-time work. Counsel for claimant have cited cases from other jurisdictions where the base rate of pay for accidental injury to a volunteer policeman under the workmen's compensation act was that of a regular full-time employee performing the same kind and character of work. However, these cases lend no help since the facts are not comparable to those in the instant case, and the statutes there under consideration contain provisions not within our workmen's compensation act. In the instant case, claimant was not commandeered into service by any law enforcement officer to perform an emergency function but, on the contrary, he had a definite contract with the City to perform certain services at the specified wage of other volunteer policemen of the defendant City.

A careful examination of the record reveals that the trial court's findings are supported by the evidence, and from an analysis of the pertinent provisions of the workmen's compensation act it is apparent that the trial court's award and judgment entered thereon must be affirmed.

It is so ordered.