No. 42,062

W. H. Durnil, *Appellee*, v. Jack Grant d/b/a The Grant Bill-
ingsley Fruit Co., *Appellant* (Harry E. Smith, *Appellee*), and
Fidelity and Casualty Company of New York, *Appellant*.

(356 P. 2d 872)

Opinion filed November 12, 1960.

*Harry E. Robbins, Jr.,* of Wichita, argued the cause, and *Dwight S. Wallace*
and *Donald C. Tinker, Jr.,* both of Wichita, were with him on the brief for the
appellants.

*Clifford L. Malone,* of Wichita, argued the cause, and *Mark H. Adams,
Charles E. Jones, Wm. I. Robinson, J. Ashford Manka, Mark H. Adams, II,*

*John S. Seeber* and *Floyd E. Jensen,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a workmen's compensation case wherein the respondent and insurance carrier seek to reverse a judgment of the district court awarding the claimant compensation for injuries received in an accident.

The primary question is whether there is substantial competent evidence to support the trial court's finding that a contractual relationship existed between the claimant's immediate employer and the respondent within the provisions of G. S. 1949, 44-503(*a*), (Subcontracting).

If the answer to the foregoing question is in the affirmative, then two additional questions must be answered: Whether the trial court properly ordered the claimant's compensation paid in a lump sum; and whether there was substantial competent evidence to sustain the trial court's finding of the claimant's average weekly wage.

The appellee herein, W. H. Durnil, will be referred to as the claimant, and the appellant, Jack Grant d/b/a The Grant-Billingsley Fruit Co., will be referred to as the respondent. The immediate employer of the claimant, Harry E. Smith, will be referred to as Smith.

The claimant's immediate employer, Smith, was in the business of delivering fruit and produce to retailers and restaurants in and around Wichita, Kansas. On March 31, 1958, the claimant was riding with Smith in his truck while making deliveries to Smith's customers, when Smith "blacked out" and drove the truck over a curb, down an embankment approximately ninety-five feet striking a tree, thereby injuring the claimant. The accident totally disabled the claimant, who was sixty-six years of age, for the remainder of his life. (The extent of disability is not challenged on appeal.) Claimant's work with Smith started in October, 1957, and consisted of picking up groceries and delivering them to retail stores and restaurants.

The respondent is in the wholesale fruit and vegetable distributing business, a selling operation, covering an area within a radius of one hundred miles of Wichita. The respondent sells "to retailers, sub-jobbers, wholesalers—anybody," and has his own salesmen who do nothing but solicit orders. They are paid a straight

salary.  The respondent also has his own trucks and truck drivers, who deliver his produce to retail stores.  The drivers of his trucks are employees of the respondent and are paid $1.98 per hour with time and a half for overtime.  His truck drivers average forty to forty-one hours per week.

Smith's operation was conducted as hereafter related, viewing the evidence most favorably to the claimant.  Smith received orders from retailers for various items of produce.  These orders were received at his home and by a telephone at the respondent's place of business.  This telephone was furnished to Smith by the respondent, who also furnished Smith a desk on which to write up orders and to transact business.

The first thing in the morning, Smith would proceed with his truck to the respondent's place of business, where a special dock space was furnished him, to procure the necessary items of produce from the respondent.  Smith and the claimant, who was Smith's only employee, would go into the warehouse of the respondent and obtain from the shelves and lockers the items which were needed to fill the orders.  These items were wrapped in paper and tied by Smith and the claimant at a special place in the warehouse where Smith worked.  The paper and twine were furnished by the respondent and the items were loaded by Smith and the claimant onto Smith's truck.  No employees of the respondent assisted or supervised Smith or the claimant in procuring, wrapping or loading the produce onto the truck.

After the produce was loaded onto the truck a house ticket, furnished by the respondent, was written up by Smith.  This house ticket reflected the items procured; it gave the name of Smith, and the name of the ultimate retailer to whom such items were to be delivered.  No price appeared on the house tickets.  Sometimes employees of the respondent checked off the items on the house tickets as they were loaded onto the truck, but when the respondent's employees were busy, Smith did this himself.  In procuring, wrapping and loading the produce Smith and the claimant worked alongside the respondent's employees who were procuring, wrapping and loading produce onto other trucks.  No payment was made by Smith to the respondent upon receiving the produce.

The respondent furnished Smith a price list which contained the retail price for which the items of produce were to be sold to Smith's customers.  This was the same price list used by the respondent in the sales made to his customers.  Smith made his own invoice

from the house ticket and used the respondent's price list for billing his own customers.

When certain items could not be obtained or were not available from the repondent, Smith procured these items from other produce houses in Wichita. However, in these other produce houses employees and agents of these businesses obtained the produce from the locker rooms, wrapped it and loaded it onto the truck, and Smith was not furnished facilities at these locations.

After the produce was loaded on the truck, Smith, together with the claimant, proceeded to deliver the various items to the retailers who had placed their orders. Upon delivering the produce to the retailers, Smith would collect from them the price indicated on the price list furnished to him by the respondent. After completing all the deliveries Smith would then usually return to the respondent's place of business and account for the produce delivered that day. When Smith paid the respondent for the produce received, the amount was computed by the respondent at a jobber's price, which was less than the price for which the produce was sold to Smith's customers. The evidence does not indicate any other financial arrangement between Smith and the respondent.

If the produce obtained from the respondent was unsatisfactory to the customer, it was returned by Smith to the respondent for which credit was given or replacement made by the respondent. There was no competitive interference between Smith and the respondent as to the securing of customers or with their respective routes.

On occasions when Smith was unable to deliver his route, employees of the respondent delivered it. After the accident herein, the respondent took over Smith's route "as a matter of competition" and most of Smith's customers as of the hearing date were the respondent's customers.

Smith was not operating under the workmen's compensation act and carried no insurance for that purpose.

The claimant worked six days a week for Smith, with an average of four hours per day all in the forenoon. In the afternoon the claimant engaged in his own business, which consisted of interior decorating and carpenter work. For his services Smith paid the claimant $20 per week in cash, and $25 per week in cash when the claimant operated the route by himself, which the claimant did for a period of three weeks in February, 1958, when Smith was ill. The claimant was paid on Saturday, March 29, 1958, for the preceding

week's work in the sum of $20. The accident occurred on a Monday, March 31, 1958, and for his services that day Smith's wife went to the hospital, where the claimant was hospitalized, and handed the claimant a five dollar bill, stating "Here is your day's work, Bill."

It is not disputed that at the time of the accident Smith's truck contained produce received from the respondent, and Smith and the claimant were on their route to deliver this produce to Smith's customers.

The respondent's evidence was inconsistent in certain particulars concerning what the respondent furnished to Smith as facilities on the respondent's premises.

On the primary issue before the court the workmen's compensation commissioner found there was no employer-employee relationship between the respondent and Smith, or the claimant herein; nor was there any relationship between the claimant and the respondent through Smith, which would bring Smith and the claimant under the Kansas workmen's compensation act. The commissioner thereupon denied compensation, stressing in his summary of the evidence that Smith was a customer of the respondent who sold produce to his (Smith's) customers and purchased the produce from the respondent or other wholesale produce houses at a discount to fill his orders.

On appeal to the district court the claimant was granted an award of compensation, the district court finding upon the primary issue herein as follows:

"Second: That at the time of the accident on March 31, 1958, claimant was immediately employed by Harry E. Smith; that at said time there existed a contractor-contractee relationship between Harry E. Smith and the respondent, The Grant-Billingsley Fruit Co., wherein respondent contracted with Harry E. Smith for the execution by or under said contractor work which had been undertaken by respondent and which work was a part of the trade or business of respondent. That the claimant was engaged as a workman in the execution of said work and was injured by accident arising out of and in the course of said employment which came within the provisions of Sec. 44-503 of the General Statutes of Kansas, 1949, so as to make respondent liable to the claimant employed in the execution of said work for Workmen's Compensation benefits the same as if claimant had been immediately employed by respondent."

The district court also found the claimant was a part-time employee whose work consisted of half days for six days per week for which he was paid $5 for each of said half days, making an average weekly wage for the claimant of $60 per week.

Compensation was awarded in the sum of $34 per week, follow-

ing the first week, for a period of 415 weeks thereafter, in the total sum of $14,110 to be paid in a lump sum, less the five percent statutory discount on said amount not heretofore accrued. Further, the claimant was awarded $714.30 for medical expenses incurred, and future medical expenses incurred as a result of said injury in a sum not to exceed $1,785.70, for a total medical liability of the respondent and his insurance carrier not to exceed the sum of $2,500.

Appeal was duly perfected to this court by the respondent and his insurance carrier presenting the questions heretofore stated.

The jurisdiction of the Supreme Court on appeal in a workmen's compensation case is specifically limited to the determination of questions of law. As to questions of fact this court reviews the record only to determine whether it contains substantial evidence to support the trial court's finding, and in so doing, all the evidence is reviewed in the light most favorable to the prevailing party below. If substantial evidence appears such finding is conclusive and will not be disturbed on review. (*Madison v. Key Work Clothes*, 182 Kan. 186, 318 P. 2d 991; *Kafka v. Edwards*, 182 Kan. 568, 322 P. 2d 785; and cases cited therein.)

The court does not review the record to ascertain whether it contains evidence to support a contrary finding, but only whether there is substantial competent evidence to support the finding made by the district court. (*Angleton v. Foster Wheeler Construction Co.*, 177 Kan. 134, 276 P. 2d 325; and *Wilson v. Santa Fe Trail Transportation Co.*, 185 Kan. 725, 347 P. 2d 235.) Furthermore, on appellate review this court is not concerned with the findings of the commissioner, but only with the findings of the district court where the case is tried *de novo*. (*Burns v. Topeka Fence Erectors*, 174 Kan. 136, 254 P. 2d 285; *Davis v. Haren & Laughlin Construction Co.*, 184 Kan. 820, 339 P. 2d 41; and *Wilson v. Santa Fe Trail Transportation Co.*, supra.)

The claimant (appellee) argues that through this unique arrangement between the respondent and Smith, the work which was being performed at the time of the accident in question was, in effect, the work of the respondent, thereby making the respondent liable to the claimant for compensation under the provisions of G. S. 1949, 44-503(a).

The appellants argue that a case directly in point cannot be presented to the court because the Kansas workmen's compensation act has not been extended to cover the present situation. Thereupon they undertake to distinguish many cases, wherein coverage under the statute in question has been established, from the situation in-

volved in the case at bar, discussing *Purkable v. Greenland Oil Co.,* 122 Kan. 720, 253 Pac. 219; *William v. Cities Service Gas Co.,* 139 Kan. 166, 30 P. 2d 97; *Bailey v. Mosby Hotel Co.,* 160 Kan. 258, 160 P. 2d 701; *Swift v. Kelso Feed Co.,* 161 Kan. 383, 168 P. 2d 512; *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 231 P. 2d 239; *Bright v. Bragg,* 175 Kan. 404, 264 P. 2d 494; and *Brownrigg v. All-vine Dairy Co.,* 137 Kan. 209, 19 P. 2d 474.

G. S. 1949, 44-503(*a*), provides in substance that where any person contracts with any other person to do work, which is part of the principal's trade or business, he shall be liable to pay compensation to any injured workman employed in pursuance of the contract to the same extent as though such workman had been immediately employed by the principal.

The purpose of the section is to give employees of such contractor a remedy against the principal and to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which is part of the work undertaken by the principal. (*Bailey v. Mosby Hotel Co.,* supra; and *Hoffman v. Cudahy Packing Co.,* 161 Kan. 345, 167 P. 2d 613.)

The primary purpose of the workmen's compensation act is to provide protection to the injured workman. In *Coble v. Williams,* 177 Kan. 743, 282 P. 2d 425, the court elaborated upon the reason for Section 44-503, stating:

"The purpose of the statute was to prevent an individual from contracting to another a portion of his business operation, and thus avoid liability for compensation to a workman injured in the performance of duties under the contract, when no recovery could be had from the subcontractor or its insurance carrier, because they are financially unable to pay the compensation award. The statute is primarily for the protection of the injured workman, . . ." (p. 750.)

By the enactment of the foregoing section of the workmen's compensation act liability is extended to employees who would not normally be considered within the common law definition of an employee. The section is therefore often referred to as creating "statutory employees." Concerning statutory provisions such as these, Larson on Workmen's Compensation, Vol. 1, § 49.21, states:

"It has already been pointed out that the group of workers comprised in the common-law definition of employee does not coincide with the group of workers, who, as a matter of economic fact, need the protection of such legislation as workmen's compensation, unemployment compensation and old age and survivors' insurance. To some extent, the gap can be closed, as the preceding chapter has shown, by judicial change in the emphasis on different

factors in the 'employee' definition. At the same time, legislative amendments have moved toward a similar objective by outright extension of protection to non-employees. . . . The result, . . . is to give compensation protection to one who, by existing tests, is not an employee.

"The 'statutory employees' just discussed are the most familiar example of this process. Compensation liability is extended to one who is in law a complete stranger to the employer . . ." (pp. 730, 731.)

The principal issue in many of the cases cited under the foregoing section of the statute is whether or not the work being performed by the contractor and his injured employee is an integral part of the business of the principal. The claimant, of course, contends there is no question that delivering produce to the retailers was an integral part of the business of the respondent.

The applicability of the statutory employee section, 44-503(a), supra, in this jurisdiction, has been determined in many decisions by inquiring whether the work involved would ordinarily have been done through employees of the principal. Thus, in Larson on Workmen's Compensation, Vol. 1, § 49.12, it is stated:

". . . But, with a surprising degree of harmony, the cases . . . agree upon the general rule-of-thumb that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees." (p. 725.)

Concededly, on the facts and circumstances presently before the court, the question whether there was substantial competent evidence before the trial court to sustain its finding, that the provisions of 44-503(a), supra, are applicable, is a close one.

The appellants argue the provisions of G. S. 1949, 44-503(d), preclude recovery by the claimant in the light of the undisputed evidence, because it does not show that the accident occurred on, in, or about the premises on which the principal has undertaken to execute work, or which are otherwise under his control or management. This argument is answered in *Swift v. Kelso Feed Co.,* supra. There a feed company was engaged in the business of selling at wholesale hay, grains and feeds. Prior to 1943, as a part of its business, it operated its own fleet of trucks and delivered merchandise by its own employees. In that year it made arrangements with Johnson, who furnished his own trucks and his own employees, for the delivery of the merchandise sold by the feed company. While delivering some of the feed company's products to its customers one of Johnson's employees was injured, and the question arose as to whether or not the feed company was liable for compensation under the provisions of G. S. 1949, 44-503(a). The

court held the feed company liable under the act to the injured employee of the contractor. It specifically held 44-503(d), supra, did not prevent the employee from obtaining compensation, on the theory that the feed company was in the business of not only selling but of delivering feed as well, and wherever the product was to be delivered that was a place where the principal had "undertaken to execute work" which was a part of its trade or business.

It must be conceded this court is committed to a liberal construction of the workmen's compensation act in order to award compensation to workmen where it is reasonably possible to do so. (*Bright v. Bragg,* supra.) Stated in other words, it has been said our workmen's compensation statutes are to be liberally construed with the view of making effective the legislature's intent and not for the purpose of nullifying it, but, this rule does not permit courts to enlarge upon its plain terms. (*Leslie v. Reynolds,* 179 Kan. 422, 295 P. 2d 1076, and cases cited therein at page 427.)

In order to determine the actual relationship of parties under the workmen's compensation act courts do not regard a single fact as conclusive but will look to all the facts and circumstances involved in a particular case. (*Bright v. Bragg,* supra, and cases cited therein at page 412.)

It was held in *Bright v. Bragg,* supra, that our workmen's compensation act does not require an express contract to establish its existence, *the conduct of the parties* being sufficient to disclose an agreement. While it may be conceded the factual situation therein can be readily distinguished from the case at bar, the foregoing proposition of law is sound and does have application herein.

The case most nearly in point to the case at bar is *Brownrigg v. Allvine Dairy Co.,* supra. There the defendant in a common law action operated a dairy company, which bought milk in Wyandotte and Leavenworth Counties, and sold it in Kansas City, Kansas. The dairy company controlled the wholesale routes but not the retail routes. The company sold milk to persons who owned their own trucks on which were painted the name of the dairy company, its telephone number, and permit number. The name of the driver also appeared on the doors of the independent trucks. The dairy company retained no control over persons who owned their own trucks—the retail men. The bottled milk was sold to them, and they paid cash for it each day. They could do what they pleased with the milk. They built up their own routes, and did their own

selling. The milk bottles, however, carried the label of the dairy company.

The plaintiff brought a common law action alleging negligence on the part of one of the independent truck drivers by whom she was injured, charging that such driver was the agent or servant of the dairy company. The dairy company demurred to the plaintiff's evidence contending that the evidence showed the driver to be an independent contractor, and the court so held. Being an independent contractor, the dairy company was not liable.

Upon all of the facts, conditions and circumstances presented by the record herein, we cannot say as a matter of law there was no substantial competent evidence to sustain the finding of the trial court that a contractual relationship existed between Smith and the respondent within the provisions of 44-503(a), supra. Some of the more salient features of the evidence favorable to the claimant showing the conduct of the parties consist of the following: (1) The numerous facilities supplied to Smith by the respondent on the respondent's premises; (2) if the produce delivered by Smith to his customers was not acceptable, the respondent replaced it; (3) the produce was delivered by Smith to his customers at the respondent's price and not at his own price; thus, there was no competition between Smith and the respondent as to the price; (4) there was no competitive interference in securing customers or with their respective routes; (5) when Smith was unable to deliver his route on occasions, employees of the respondent delivered it; and (6) the house tickets of the respondent showed the product procured and the ultimate retailer to whom it was to be delivered. The conduct of the parties in these respects is consistent with the fact that the object of the respondent, to supply grocery products to retailers, was accomplished by Smith and was identical to that accomplished by the respondent through the use of his own trucks and immediate employees. Thus, while Smith and the claimant were in the process of delivering produce to the retailers, they were engaged in performing the work of the respondent. This is consistent with the primary object of the respondent. The fact there was no particular control over the manner of operating the route itself is immaterial, since the function of a contractor is to perform work according to his own methods.

It may therefore be said the conduct of the parties in this case is sufficient to disclose an agreement between Smith and the re-

spondent as to the disposition of the products of the respondent. It is also permissible to say on the evidence here presented, considered in the light most favorable to the claimant, that the conduct of the parties was inconsistent with the contention that there was an outright sale from the respondent to Smith. The finding of the trial court that the claimant is entitled to recover compensation under the provisions of 44-503(a), supra, must therefore be sustained.

Did the trial court properly order the claimant's compensation paid in a lump sum?

The provisions of G. S. 1949, 44-531, have been changed by the Laws of 1955, Chapter 250, Section 8. The section (G. S. 1959 Supp., 44-531) now reads:

> "Where payments under an award have been made for not less than six (6) months, the workmen's compensation commissioner may, when he, in his sound discretion, determines it is for the better interest of the injured employee or the dependents of a deceased employee, require the employer to redeem all or any part of his liability under such award by the payment to the workman, or the dependents of the deceased workman, of a lump sum equal to ninety-five percent (95%) of the amount of the liability redeemed under the award, upon application of either party, upon notice to the other party by the commissioner. Upon paying such amount, the employer shall be discharged of and from all liability for the portion redeemed under this section." (Emphasis added.)

In this case the workmen's compensation commissioner denied an award of compensation to the claimant, and no award was paid to the claimant pending appeal to the district court. Therefore, at the time the district court awarded compensation to the claimant, *payments under an award* had not been made for a period of six months. Thus, under the plain wording of the statute the district court, assuming it had authority, could not make the award payable to the claimant in a lump sum. Upon compliance with the conditions specified in this section of the act as it now reads, it is specifically stated *"the workmen's compensation commissioner may"* require the redemption of all or any part of the employer's liability under an award of compensation in a lump sum.

The appellants argue the workmen's compensation act is comprehensive and complete within itself and covers every phase of the workman's right to compensation and the procedure for obtaining it, citing *Forcade v. List & Clark Construction Co.*, 172 Kan. 119, 238 P. 2d 549. They contend under this provision of the act the district judge had no authority to grant a lump sum award, he not being the workmen's compensation commissioner—the party specified in the

statute to grant the lump sum award. On the facts presently before the court we find it unnecessary to determine whether the district judge has authority to make a lump sum award, and therefore leave the question open.

Was there substantial competent evidence to sustain the trial court's finding that the claimant's average weekly wage was $60?

Fundamentally, the determination of the average weekly wage is a question of fact, and if there is evidence to support the finding of the trial court, its finding and the judgment based thereon should not be disturbed upon appellate review.

The basis for the finding, considering the only evidence in the record, was that claimant worked six days a week for Smith, with an average of four hours per day all in the forenoon, and on the day of the accident was paid $5 for his "day's work."

On this point the trial court erred in two particulars. In the first place the evidence definitely established that the claimant was paid $20 per week under the contract of hiring in force at the time of the accident. For this wage he worked six days per week for Smith, averaging four hours per day all in the forenoon. To say that the five dollar bill, given the claimant by Mrs. Smith in the hospital on the day the claimant was injured for his "day's work," established the claimant's wage is unrealistic and utterly absurd. Concededly, $5 for the claimant's services on the day he was injured would figure more than $20 per week, but this was a special day and there is no evidence to indicate how many hours the claimant worked on that day. The only logical conclusion to be drawn from this payment of $5 in cash is that any payment in excess of the claimant's actual earnings under the contract of hiring in force at the time was a gratuity prompted by the circumstances of the accident and the claimant's injury, for which he was hospitalized on the day of the accident.

In the second place, upon the evidence presented by the record in this case, the trial court erred in arriving at the average weekly wage of the claimant. G. S. 1959 Supp., 44-511, provides in pertinent part:

"(1) Whenever in this act the term 'wages' is used it shall be construed to mean the money rate at which the service rendered is recompensed *under the contract of hiring in force at the time of the accident,* and shall not include gratuities received from the employer or others . . ." (Emphasis added.)

At the time the claimant was injured the money rate at which the services rendered was being paid under the contract of hiring was

$20 per week. The $20 covered all work performed by the claimant under the contract of hiring between the claimant and his immediate employer, Smith. The mere fact that the provisions of 44-503(*a*), supra, entitle the claimant to recover compensation from the respondent does not alter his contract of hiring with Smith. And since the claimant, under contract, agreed to work for a specified wage, he cannot have his pay rate increased for compensation purposes, merely because the truck drivers of the respondent received a greater rate of pay and worked forty hours a week for the respondent. (*Borchardt v. City of Leawood,* 178 Kan. 705, 290 P. 2d 811.)

A recent case in which the provisions of G. S. 1959 Supp., 44-511, have been construed and applied is *Walters v. Greenland Drilling Co.,* 184 Kan. 157, 334 P. 2d 394. This case gives the history of the foregoing section of the statute, and it also cites and considers other Kansas cases relating to the calculation of the average wage of a part-time employee under the Kansas workmen's compensation act. See, also, *Wilbeck v. Grain Belt Transportation Co.,* 181 Kan. 512, 313 P. 2d 725.

In the *Walters* case the workmen had three concurrent contracts of employment with three oil companies as an oil field pumper. He met his death in the course of his employment by one of the employing companies, and the court construed G. S. 1957 Supp., 44-510 and 44-511, in view of the history of such statutes, to allow the workman's dependents to recover for his death only on the basis of his annual earnings based upon the contract with the employer on whose premises the decedent met his death. It was said the statutes must be construed to definitely forbid the consideration of concurrent contracts of employment in determining the decedent's annual earnings.

While the foregoing decision is not directly in point on the facts, it is rather closely analogous. In the instant case the claimant did not have other concurrent contracts of employment, but in the afternoon, when claimant was not working for Smith, he was engaged in his own business which consisted of interior decorating and carpenter work.

We therefore hold the same principle of law, which runs through all of the foregoing cases cited on this point, relative to the calculation of the average wage of a part-time employee under the workmen's compensation act, applies to the situation presently before the court and controls the decision. On the record presented by the instant case, the claimant's average weekly wage was $20 per week,

there being no substantial competent evidence to sustain the finding of the trial court that the claimant's average weekly wage was $60 per week.

The judgment of the lower court is affirmed insofar as it entitles the claimant to recover compensation from the respondent and his insurance carrier under the provisions of 44-503(a), supra, but is reversed, vacated, and set aside insofar as it purports to award a lump sum payment of compensation based upon an average weekly wage of $60 per week. The case is remanded to the lower court with instructions to recompute the compensation to which the claimant is entitled and to make an award consistent with our decision herein.

It is so ordered.