No. 43,287

RUCELL HENDERSON, *Appellant*, v. SUTTON'S FOOD CITY, INC., (Respondent), and ALLIANCE MUTUAL CASUALTY COMPANY, (Insurer), *Appellees*.

(379 P. 2d 300)

Opinion filed March 2, 1963.

*Stanley R. Roose*, of Topeka, argued the cause, and *Milford M. Magee*, also of Topeka, was with him on the brief for the appellant.

*James E. Benfer*, of Topeka, argued the cause, and *Harold E. Doherty* and *Ernest J. Rice*, both of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a workmen's compensation case wherein the claimant seeks to reverse a judgment of the district court denying compensation.

The question is whether the claimant, who sustained accidental injuries in the course of his employment, was a statutory employee of the respondent as contemplated by the provisions of G. S. 1949, 44-503 (a).

The facts material to the issue in this case are not in dispute. In 1949 George Irving entered into an oral agreement with E. A. Sutton for the removal of trash and rubbish at his grocery store in North Topeka, Kansas. Under the agreement Irving was to pick up the trash and rubbish for a fixed sum of money per month, and Sutton had the right to terminate the arrangement at any time without advanced notice. At no time did Sutton exercise direction, supervision or control over the operation of Irving's business.

Irving did not have a set time to pick up the trash and rubbish, but was required to pick it up as frequently as necessary. Normally this required that it be picked up every day.

Irving was an independent businessman who engaged in the business of picking up trash from numerous business establishment in Topeka, Kansas.

Sometime after the original agreement Sutton's Food City, Inc. (appellee-respondent—hereafter referred to as Sutton), was organized and suceeded to the operation of the grocery store in question.

In 1959 Irving sold his trash route to William Miller who continued to operate it just as Irving had done. Miller was at no time subject to any direction, supervision or control by Sutton. In fact, at no time prior to July or August, 1961, did Sutton know that Irving had sold the business. (This was sometime after the accident here in question.)

On the 27th day of May, 1961, Rucell Henderson (claimant-appellant) was engaged by Miller to remove the trash from Sutton's place of business. According to the claimant's testimony he had been *helping Miller out "quite a bit;"* that he was to drive and pick up the trash on Sunday morning, May 28; that his destination was Sutton in North Topeka; and that Sutton was the only place he had to pick up the trash on that particular morning.

While enroute to Sutton's place of business claimant had an accident. It was a single vehicle accident in which the claimant blacked out and was thrown from the truck he was driving, sustaining injury as the truck went over his body.

The use of Miller's truck by the claimant was not limited, and he was free to do as he desired with it. Claimant had no set time to go to Sutton and could, in fact, have gone anywhere prior to making the trash haul. The claimant's instructions were to pick up the trash sometime on Sunday.

The claimant (appellant) seeks to bring himself under the provisions of G. S. 1949, 44-503 (*a*). This section provides in substance that where any person contracts with any other person to do work, which is part of the principal's trade or business, he shall be liable to pay compensation to any injured workman employed in pursuance of the contract to the same extent as though such workman had been immediately employed by the principal.

The appellant's position is best summed up by a statement taken from his brief. He contends:

Since there is no question but that a subcontract exists, the only issue to be determined is whether the subcontract was for performance of a part of the respondent's trade or business, and by all applicable tests the contract between respondent and claimant's immediate employer would appear to meet this requirement. . . ."

The section of the statute here under consideration (44-503 [a], supra) is often referred to as creating "statutory employees." This section was considered and reviewed in *Durnil v. Grant*, 187 Kan. 327, 356 P. 2d 872, to which reference is made. Further discussion herein will proceed on the assumption the reader has familiarized himself with the discussion in *Durnil* at pages 333 to 335, inclusive.

Under the foregoing section of the statute it was said in *Coble v. Williams*, 177 Kan. 743, 282 P. 2d 425:

"In determining whether the principal-contractor relationship existed between Williams and the Lead Company, and to whom claimant should look for compensation, the first test to be applied is, 'Whose work was being performed?' out of which the injury arose, and if such work was an integral part *or a reasonable incident of the trade or business* of one person who undertook to have the work performed for him by another, then the relationship of principal-contractor exists. . . ." (p. 747.) (Emphasis added.)

The appellant seeks to bring himself within the italicized portion of the above quotation.

The above test has repeatedly been applied under varying facts and circumstances, including cases in which the work was only an incident to the trade or business involved. (*Schroeder v. American Nat'l Bank*, 154 Kan. 721, 121 P. 2d 186; *Johnson v. Voss*, 152 Kan. 586, 106 P. 2d 648; and *Raynes v. Riss & Co.*, 152 Kan. 383, 103 P. 2d 818.) A study of the foregoing cases, relied upon by the appellant, will disclose the respondent had the right to control the manner in which the work was being carried on by the claimant workman.

The appellant cites us to cases from foreign jurisdictions. In *Fox v. Fafnir Bearing Co.*, 107 Conn. 189, 139 Atl. 778, the principal employer was held liable to the workman of a contractor who was injured while cleaning the windows of a factory building. The section of the Connecticut act, corresponding to the Kansas provisions of 44-503 (a), supra, differed in that it required the work to be in, on or about premises controlled by the principal employer. The court there held the washing of the windows of the respondent's factory was " 'a part or process in the trade or business of the principal employer' " (p. 192) under the act.

In *Hoard v. Sears Roebuck & Co., Inc.*, 122 Conn. 185, 188 Atl. 269, a workman was regularly employed by one who had a contract with Sears Roebuck *to dispose of rubbish* which accumulated at Sears Roebuck's store by reason of unpacking merchandise which came to it in the conduct of its business. *The yard was cleaned once a week* by such workman. The workman, while standing in the yard for this purpose and talking with another employee, was struck and injured by a glass globe which had been swept out of the third floor of Sears Roebuck's building. The action was brought for negligence and willful and wanton misconduct of Sears Roebuck's servant. The Connecticut court held Sears Roebuck, as principal employer, was liable to pay workmen's compensation and was not liable in an action at common law. The court said "the work was being done. 'about' premises under defendant's control within the meaning of the statute." (p. 189.)

In *Fitzen v. Cream Top Dairy*, 73 Idaho 210, 249 P. 2d 806, the Idaho Supreme Court held that *a workman employed by a dairy company* to dig a cesspool, as a necessary part of the sanitary sewage disposal system of the dairy, was an employee under their workmen's compensation act, rather than an independent contractor. There the dairy company had the right to control and direct the details of work to be performed and to say whether work should stop or continue. This was held to be the test for making the determination.

We do not view workmen's compensation cases from foreign jurisdictions as too persuasive because they are dependent entirely upon their respective statutes, which differ in some respects from the Kansas workmen's compensation act, both in wording and interpretation.

In *Durnil v. Grant*, supra, it was said:

"The applicability of the statutory employee section, 44-503 (*a*), supra, in this jurisdiction, has been determined in many decisions by inquiring whether the work involved would ordinarily have been done through employees of the principal. Thus, in Larson on Workmen's Compensation, Vol. 1, §49.12, it is stated:

" '. . . But, with a surprising degree of harmony, the cases . . . agree upon the general rule-of-thumb that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees.' (p. 725.)" (p. 334.)

Insofar as the record discloses hauling trash is not work which the manager of a grocery super market would ordinarily have done through employees of the business.

Here Sutton exercised no direction, supervision or control over the claimant or his employer, or over the manner in which Miller carried on his trash hauling business. The claimant was not on the premises of Sutton when the accident occurred or even near the premises. He was many blocks away and had not been on the premises the day of the accident.

We think it immaterial to a decision herein that on the day of the accident here in question claimant's only trash haul was to be from the Sutton store. The business of Miller was that of hauling trash. There were approximately twenty or more business establishments under trash hauling contracts with Miller, who was claimant's employer. Had claimant's accident occurred on a week day, could claimant look to any one of the twenty or more businesses on the route for workmen's compensation? We think not. The fact that claimant may have been destined to a particular establishment where the trash was to be picked up is immaterial.

Claimant was not actually performing the work of Sutton, but was performing the work of Miller, an independent businessman with twenty or more different trash hauling stops. This was an independent business operation. This point is clarified by the testimony of Mr. Irving when he said that he *sold the route*. Nothing was said concerning the assignment of a contract with Sutton, and neither Irving nor Miller considered it necessary to notify Sutton of the sale.

What is the classification of a trash hauler? There is little case law, but two cases in point as to the facts here presented say this is a separate and independent busines operation. (*Hanisko v. Fitz-patrick Brothers*, 232 Mich. 593, 206 N. W. 322; and *Halletz v. Wise-man*, 183 N. Y. S. 112.)

Upon application of the foregoing tests to the facts and circumstances presented by the record herein, we hold the claimant's immediate employer (Miller) was an independent contractor (See, *Brownrigg v. Allvine Dairy Co.*, 137 Kan. 209, 19 P. 2d 474), and the claimant was not a statutory employee of Sutton under 44-503 (*a*), supra.

The evidence presented by the record supports the decision of the trial court, and all findings necessary to support the decision are presumed to have been made by the trial court.

The judgment of the lower court is affirmed.