No. 44,061

ALFRED H. ARMSTRONG, *Appellant*, v. MANPOWER, INC., of Wichita, and CENTRAL SURETY AND INSURANCE CORPORATION, Insurance Carrier, *Appellee*.

(401 P. 2d 903)

Opinion filed May 15, 1965.

*A. Price Woodard, Jr., Robert D. Watson* and *Roscoe D. Austin*, all of Wichita, were on the brief for the appellant.

*Stanford J. Smith*, of Wichita, argued the cause, and *P. K. Smith* and *F. C. McMaster*, both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This is a workmen's compensation case. The plaintiff, Alfred H. Armstrong, sometimes called claimant herein, has appealed from an award entered in the court below. It is agreed that the sole question presented for our determination is the correct method of computing the claimant's average weekly wage.

The essential facts have been stipulated. Claimant was injured while unloading a boxcar at a time when he was employed by Manpower, Inc., an organization engaged in supplying skilled and unskilled workmen to businesses and industries in the Wichita community, on a daily or a job basis. Any person may apply at Manpower's office and, if work is available, will be sent to a job which might last from a few to eight hours or more per day. Those who apply for work are not obliged to report to Manpower's office every day, but only when they wish to work. Often, there is insufficient work for everyone who applies and, on such occasions, there may

be many who are not provided with work for that day. This is realized by everyone who works, or has worked, for Manpower, Inc., and everyone is hired on such understanding. Workers are paid only for the hours actually worked and their pay is based on the type of work performed, with no guarantee as to the number of hours or the number of days they will work. The plaintiff workman was being paid $1.00 per hour at the time of his injury.

The workmen's compensation examiner, who first heard this matter, found plaintiff's average weekly wage to be $40.00. On appeal, the district court found the wage to be $27.78, and the difference between these two amounts is involved in this appeal.

G. S. 1961 Supp., 44-511, which is now K. S. A. 44-511, defines the method of calculating wages. So far as pertinent to this lawsuit, the statute provides:

"(1) Whenever in this act the term 'wages' is used it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, and shall not include gratuities received from the employer or others. . . .

"(2) . . . Where the rate of wages is fixed by the hour the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of work involved. In any case the weekly wage shall be found by multiplying the daily wage by five (5) or if the employee worked a greater proportion of the week regularly, then by five and one-half (5½), six (6), six and one-half (6½), or seven (7), according to the customary number of working days constituting an ordinary week in the character of work involved. Five (5) days shall constitute a minimum week.

"(3) In any case, the average yearly wage shall be found by multiplying the weekly wage, determined as hereinbefore provided, by fifty-two (52)."

The import of this statute is unmistakable. Where a workman, at the time of his injury, was being paid on an hourly basis, as was this claimant, his daily wage shall be computed by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the kind of work involved, and the weekly wage is then to be found by multiplying the daily wage by the number of days (not less than five) customarily making an ordinary working week in the employment involved. This formula furnishes a fairly uncomplicated and, we believe, an equitable method of computing the average weekly wage of a worker who is paid by the hour.

However, this simple formula will not work unless it can first be determined how many hours customarily constitute an ordinary

working day, for that is the indispensable first rung of the ladder which one ascends in computing first the average daily wage, then the average weekly wage, and finally the average yearly wage. So, in this case, the statutory rule cannot be employed because the trial court specifically found that "claimant had no contract of employment to work any certain number of hours per week or day and *there is no customary number of working hours constituting an ordinary day in the character of work performed by the claimant."* (Emphasis supplied.) The claimant does not challenge this finding which, it should be noted, is identical with the finding reached by the examiner. Under well-established rules of appellate procedure, we are bound by this finding, in view of the stipulated facts contained in the record.

While both the examiner and the trial court concluded there was no customary number of working hours making up an ordinary day in the kind of employment shown here, they differed as to how claimant's average weekly wage should be determined. The examiner computed it at the rate of $1.00 per hour for eight hours per day for five days per week, or $40.00. This calculation was adopted because the record disclosed that some days the claimant worked as much as eight hours or more. On the other hand, the trial court took the view that claimant's average weekly wage should be determined by the number of hours worked per week, which he computed to average 27.78, thus arriving at $27.78 per week.

We are now asked to decide which of the two methods of computation is correct under the facts of the case.

Our attention has been directed to no statutory formula for computing the average weekly earnings of an injured workman, other than that set out in G. S. 1961 Supp., 44-511, nor has our own research revealed any other legislative pronouncement. Hence, we are without legislative direction as to the manner in which this claimant's weekly wage should be figured even though we may be sure that the legislature never intended a workman in plaintiff's position to be without remedy.

Neither do the prior decisions of this court cited by the plaintiff furnish any appreciable assistance. In *Baker v. Western Power & Light Co.,* 147 Kan. 571, 78 P. 2d 36, there was evidence as to the customary hours constituting a working week. Thus, we held that the customary working hours per day or week which constituted an ordinary day or week in the kind of work involved should be used

in computing compensation rather than the actual hours of labor performed. We agree with the rationale of that decision but it affords no precedent for the situation presented here.

In both *Borchardt v. City of Leawood,* 178 Kan. 705, 290 P. 2d 811, and *Durnil v. Grant,* 187 Kan. 327, 356 P. 2d 872, the claimants were employed under contracts definitely fixing their compensation; the rate being $3.00 per night in Borchardt, and $20.00 per week in Durnil. In both cases this court held the contract rate must prevail. Neither case is helpful here.

Although neither party has directed our attention to the rules promulgated by the workmen's compensation director, we have nevertheless examined his regulations to ascertain if any administrative interpretation has been given to 44-511 which might help us in construing the statute and in finding a basis for reckoning the claimant's average daily or weekly wage. We learn that article number 51-11-1 pertains to the computation of wages, but its provisions relating to cases where there is no customary number of working hours per ordinary day in a specific employment are inconsistent and not persuasive.

In the absence of legislative fiat, local judicial precedent, or controlling administrative interpretation, we believe the method of computation adopted by the trial court is correct. The average number of hours per week actually put in by a workman would appear a rational and fair basis for determining his average weekly wage when he is paid by the hour, and when the character of his work is such that there is no customary number of hours in an ordinary working day.

In 58 Am. Jur., Workmen's Compensation, § 308, p. 793, we find this rule stated:

"The average earnings during a specified period of persons engaged in the same or a similar employment is sometimes made the basis for determining the extent of loss of earnings or earning capacity. But where there is no evidence from which such average earnings may be ascertained, the actual earnings of the employee must be taken as the basis for computation."

A situation similar to the one presented here was considered in *Rice's Case,* 229 Mass. 325, 118 N. E. 674. A Massachusetts statute provided that in computing the average weekly wage of an injured worker, regard be had to the average amount earned weekly by other workers employed in the same grade and in the same class of employment. The court found this formula was not applicable

since there was nothing to show what average weekly amount was earned by persons in the same grade and line of work as the claimant. After holding the statutory definition to be inapplicable, the court said that ". . . the words 'average weekly wages' . . . should be interpreted in their common and ordinary sense and should be computed by dividing the total amount earned by the number of weeks of employment. . . ." (p. 328.)

We conclude, for reasons heretofore stated, that the provisions of G. S. 1961 Supp., 44-511, defining the formula for computing the average weekly wage of a workman who is paid by the hour, are not applicable to a workman in this claimant's position. We further conclude that in the absence of legislation applicable to the facts disclosed in this case, the average weekly wage of a wage earner, such as plaintiff, is to be computed on the basis of his actual average weekly earnings.

The judgment of the court below is affirmed.