No. 44,047

Troy Hataway, *Appellant*, v. Proctor & Gamble Manufacturing Company, a Corporation, *Appellee*.

(405 P. 2d 350)

Opinion filed August 17, 1965.

*Joseph P. Jenkins,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Norma Braly, Barton P. Cohen, Jacob F. May, Jr., Frederick K. Cross* and *Edward G. Collister, Jr.,* of Kansas City, were with him on the brief for appellant.

*James K. Cubbison,* of Kansas City, argued the cause, and *Blake A. Williamson, Donald A. Hardy, A. C. Cooke* and *Sheldon M. Crossette,* of Kansas City, were with him on the brief for the appellee.

*Lee E. Weeks, Leonard O. Thomas, J. Donald Lysaught, Richard Millsap, Robert H. Bingham, Ervin G. Johnston* and *Miles D. Mustain,* were on the brief of Helmerich & Payne, Inc., *amicus curiae.*

The following opinion was prepared by Mr. Justice Robb and approved by the court during his lifetime:

This appeal by the plaintiff is a tort action for damages for personal injuries by reason of negligence of the defendant was taken from the judgment and order of the trial court sustaining defendant's motion for summary judgment on the basis that plaintiff's sole remedy is under the workmen's compensation act.

Plaintiff's counsel admits that if plaintiff is a statutory employee as defined in G. S. 1949, 44-503 (*a*) and (*d*), now K. S. A. 44-503 (*a*) and (*d*), then plaintiff cannot bring this action for damages as an ordinary third party tortfeasor.

The facts are not in dispute or argued. Plaintiff was employed by Fruin-Colnon Contracting Company as a labor foreman in defendant's plant in Kansas City, Kansas, during construction of an extension and addition to its Tide Department. To expedite

plaintiff's travel from one location to another on defendant's premises he was furnished with a bicycle by Fruin-Colnon. Defendant used a four-wheel fork lift on its premises which had a front end fork with a wooden pallet and on July 9, 1962, the day of the accident, a heavy two-wheel truck was being transported thereon. It was alleged that through the negligence of defendant's operator of the fork lift, the two-wheel truck was dislodged from the pallet and fell upon and against plaintiff while he was passing by on the bicycle, causing him to sustain severe injuries. His injuries are not presently in dispute and will not be detailed herein.

The trial court held that plaintiff was a statutory employee of defendant under the workmen's compensation act and sustained defendant's motion for summary judgment. Plaintiff appeals from that finding and order.

The sole question presented for appellate review is whether at the time of his injury plaintiff was an employee of defendant and would be subject to and limited by the following provisions of 44-503 (subcontracting):

"(a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. . . . (d) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management."

Plaintiff in support of his contention he was not such a statutory employee, as above defined, cites *Durnil v. Grant*, 187 Kan. 327, 356 P. 2d 872; *Henderson v. Sutton's Food City*, 191 Kan. 145, 379 P. 2d 300.

Defendant relies on *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 231 P. 2d 239.

A number of arguments and authorities are submitted by counsel

but the most pertinent and controlling appear to be the three above-cited cases.

The statute in question which would make plaintiff a statutory employee has been heretofore set out.

In the Lessley case, determined by motion for judgment on pleading ordered sustained, cited and relied on by defendant, it was stated:

"In construing such statute we have held, so repeatedly that there can no longer be any question regarding the rule, that a principal is liable for injury sustained by workmen of an independent contractor when the accident arises out of and in the course of the the principal's trade or business. Indeed we have said the very purpose of such section is to give the employees of such contractor a remedy against the principal and to give its provisions any other construction would simply mean an employer subject to the compensation act could escape liability for injuries received by persons in carrying on his trade or business by the simple expedient of hiring an independent contractor to do the work and letting him employ and direct the workmen. [Citations] It is, of course, elementary that the statute is equally applicable to employees of subcontractors. [Citation] Appellant recognizes this rule and admits that the principal cannot be held liable under the common law for the negligent injury of an employee of an independent contractor where the work being performed under the contract is part of the trade or business of the principal. However, in fairness, it should be here noted he insists the principal is not relieved from liability under the common law simply by reason of the fact the work of such a contractor may be required to equip the principal's trade or business for operation." (p. 204.)

It should be noted that in the admitted facts in the pleadings of the Lessley case, we find in regard to the Kansas Power and Light Company that,

"It was authorized to do business as a public utility and . . . by virtue of the articles of incorporation issued it by the state of Kansas it was authorized . . . to do all things necessary for the conduct of a general electric . . . business, also to *build, construct* . . . power plants, power houses . . ." (Our emphasis.) (p. 199.)

In the Durnil case the claimant's immediate employer, Smith, delivered fruit and produce to retailers and restaurants. On March 31, 1958, claimant was injured and totally disabled while riding in Smith's delivery truck due to Smith's "blacking out" during deliveries to Smith's customers.

Respondent, Grant, was a wholesale fruit and vegetable distributor selling to retailers, sub-jobbers, other wholesalers and the general public and had his own salesmen who only solicited orders. Grant also had his own delivery trucks and drivers. Smith received orders for produce at his home or by a telephone to which he had access

at Grant's place of business. Smith was also furnished a desk by Grant to write up orders and to transact business. Each morning Smith would go to Grant's with his truck, where he was furnished special dock space, and he and claimant would go into the warehouse and obtain fruit, etc., to fill the orders. The items were wrapped by Smith and claimant with Grant's paper and twine. No assistance or supervision were given by Grant's employees. House tickets were furnished Smith by Grant. The wrapping process was done alongside Grant's employees. Grant furnished Smith with the same price list his employees used and Smith did not pay Grant for the items when they were received by Smith.

Sometimes Smith would have to obtain items from other produce houses but their facilities were available to Smith. Employees even loaded the items into the truck at the other houses. When Smith could not make his deliveries, Grant's employees would make them.

In the Durnil case (p. 337) the trial court found that claimant was entitled to recover compensation under 44-503 (a), and in a well-reasoned opinion, this court affirmed that finding. The same statute was also involved in the Henderson case, where on appeal to this court claimant in a workmen's compensation case sought to reverse the trial court's judgment denying compensation.

The facts in the Henderson case were not in dispute. In 1949 George Irving orally contracted with Sutton to remove trash and rubbish from the latter's grocery store. Payment was by the month and Sutton, without notice, could terminate the agreement at any time. Sutton never exercised direct supervision or control over Irving's business operation. Irving was required to pick up trash as often as necessary which was normally every day. Irving was an independent businessman engaged in picking up trash from numerous businesses in Topeka. In 1959 Irving sold his trash route to William Miller who continued Irving's style of operation. Miller was never subject to direction, supervision or control by Sutton. Prior to July or August, 1961, Sutton had no knowledge of the sale by Irving to Miller. On May 27, 1961, Henderson, who had been helping Miller out "quite a bit" was engaged by Miller to pick up trash on Sunday morning, May 28, at Sutton's which was his only pick up on that day. En route to Sutton's Henderson "blacked out" and was injured in a single vehicle accident. Henderson's use of the Miller truck was unlimited, and he was free to do as he desired with it.

In another well-reasoned opinion in the Henderson case, we said:

"Insofar as the record discloses hauling trash is not work which the manager of a grocery super market would ordinarily have done through employees of the business." (p. 148.)

For this, and many other reasons, it was held that Henderson's immediate employer was an independent contractor and the claimant was not a statutory employee of Sutton under 44-503 (a).

In the Henderson case we found that the classification of a trash hauler was a separate and independent business operation.

Defendant's Ohio charter stated that it was formed for the purpose of,

". . . Manufacturing, refining or otherwise treating, buying, selling and dealing in soaps, candles, oils, greases, fats, glycerine and other kindred substances and products, including all by-products and other materials and products arising from or accompanying the manufacture or refining of any or all of such articles, and of acquiring, holding and disposing of all property, real, personal and mixed, necessary or convenient for carrying on said business in said State of Ohio, and also in any or all of the other states and territories and possessions of the United States and in foreign countries."

Definitions for trade or business: (1) Websters New International Dictionary (2nd Edition)— of the 13 definitions, the seventh is most appropriate:

"Act or business of exchanging commodities by barter, or by buying and selling for money, commerce; traffic; as, international *trade;* adverse influences on *trade;* a slump in the cotton trade. *Trade,* in this sense, comprehends every species of exchange or dealing, either in the produce of land, in manufactures, in bills, or in money; but it is chiefly used to denote the barter or purchase and sale of goods, wares, and merchandise, either by wholesale or retail."

(2) Blacks Law Dictionary:

"The act or business of exchanging commodities by barter; or the business of buying and selling for money; traffic; barter."

(3) Kansas authority: (a) *Gray v. Sedgwick Co.,* 101 Kan. 195, 165 P 867 (1917). "Business" is synonymous with "calling," "occupation" or "trade" and means any particular occupation or employment engaged in for a livelihood or gain.

(b) *Lehman v. Grace Oil Co.,* 151 Kan. 145, 154, 98 P. 2d 430 (1940). The court cited with approval *Horrell, et al. v. Gulf & Valley Cotton Oil Co.,* 15 La. A. 603, 131 So. 709, 712 (1931).

". . . A manufacturing concern upon organization, may contract with an independent contractor for the erection of its factory building without

retaining liability under the Compensation Act to employees of the independent contractor who undertakes the construction. It is no part of the trade, business, or occupation of the manufacturing concern to erect its factory building. Its business is to operate it after its erection."

(4) Other cases: (a) *Massolini v. Driscoll*, 114 Conn. 546, 552, 159 At. 480 (1932).

" 'Trade' commonly connotes the buying, selling or exchanging of commodities. 'Business,' however, is a much broader term. In *Easterbook v. Hebrew Ladies Orphan Society*, 85 Conn. 289, 294, 82 Atl. 561, Justice Prentice stated: 'The word "business" is one which is used with widely variant meanings. It is used broadly to signify "that which . . . engages or [occupies] time, attention, or labor, as a principal serious concern or interest." ' "

(b) *King v. Palmer*, 129 Conn. 636, 641, 30 A. 2d 549 (1943).

"If the work is of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees in the prosecution of its business, or as an essential part in the maintenance thereof, it is a part or process of his work."

We are convinced that in view of what has been stated and discussed, that the Henderson case was controlling here. Insofar as the record discloses the construction of the Tide Building was not work which the manager of the Proctor & Gamble soap company would ordinarily have done through employees of the business of manufacturing soaps and detergents. It was Fruin-Colnon Contracting Company's business to construct the building for the Tide addition on the Proctor & Gamble plant and it was the latter's business to operate the Tide addition after its erection.

The judgment is reversed with the directions to the trial court to overrule defendant's motion for summary judgment and proceed with the tort action for damages for personal injuries by reason of negligence of the defendant in accordance with the views expressed herein.

PARKER, C. J. and PRICE, J., dissenting.