No. 39,089

Frank Bright, *Appellant,* v. Clate W. Bragg, doing business as Bragg Furnace Company, *Appellee,* and Advance Furnace Company, *Intervenor.*

(264 P. 2d 494)

Opinion filed December 12, 1953.

*Payne H. Ratner, Jr.,* of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Gerald L. Michaud, Russell Cranmer, Dale B. Stinson, Jr.,*

*Starr Calvert, Jr., Carroll Pope* and *Keith Eales,* all of Wichita, were with him on the briefs for the appellant.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Gerrit H. Wormhoudt* and *Theodore C. Geisert,* all of Wichita, were with him on the briefs for the appellee.

*Sylvan Bruner, L. M. Resler, Morris Matuska,* and *Don Musser,* all of Pittsburg, and *Walter B. Patterson* and *Frank O'Brien,* both of Fort Scott, were on the briefs *amicus curiae.*

The opinion of the court was delivered by

WEDELL, J.: This was an action against Clate W. Bragg, doing business as Bragg Furnace Company, to recover damages for personal injuries sustained by plaintiff on defendant's premises where he helped unload and stack sheet metal under the latter's direction and supervision.

The trial court sustained defendant's demurrer to plaintiff's evidence. Plaintiff appeals.

The defendant was engaged in the trade or business of sheet metal repairing and installation of heating units. He had elected to operate within the provisions of the workmen's compensation act.

Appellant's evidence disclosed, in substance, the following facts:

Appellant was a truck driver of intervenor, Advance Furnace Company, which sold three loads of sheet metal to appellee to be delivered to and unloaded on appellee's premises. Appellant's principal duties were loading, hauling and unloading furnaces and sheet metal for intervenor. He recovered workmen's compensation from intervenor. The latter intervened and sought to be subrogated to any judgment which might be rendered in favor of appellant to the extent of the compensation award made against the intervenor.

On November 8, 1950, appellant and Charles McDonald, employees of intervenor, delivered, unloaded and stacked two loads of sheet metal on appellee's premises at the particular place on appellee's premises and in the manner directed by appellee. Upon arriving at appellee's place of business they contacted appellee's supervisor, a Mr. Erickson, to ascertain where and how the sheet metal was to be unloaded and stacked. The latter directed the first load be placed in certain steel and wood racks in appellee's workshop. It was placed and stacked as directed. Appellee's supervisor ordered the second load be handled in a different manner. He directed it be placed flat on the floor of the workshop. Ap-

pellant and his fellow employee, McDonald, followed the directions. Appellee advised appellant there was no room in the workshop to lay the third load flat on the floor for the reason it would be in the way of workmen. He advised appellant to bring the third load stating he would arrange a place for it. The next day appellant and McDonald loaded the rest of the metal, consisting of 110 sheets, which weighed approximately three thousand pounds. Intervenor directed they take another man to help with that load. A third man by the name of Yeager accompanied them to assist in the unloading and stacking. The three workmen proceeded to appellee's place of business. Upon arrival McDonald inquired of appellee's supervisor where he wanted the metal placed. He was advised to follow and was shown where to unload the metal. This place was a storage barn a short distance from the workshop. Appellee's supervisor and McDonald directed appellant to back the truck up to the door of the storage barn.

The sheet metal was thirty-six inches wide, about eight or nine or probably ten feet long, "real" thin and difficult to handle. Each sheet weighed about thirty pounds. The only sheet metal appellant hauled was when he would take it to appellee. Sheet metal was used by appellee to make furnaces.

Stoves, furnaces, converters and boxes were stored in the barn leaving a little less than thirty-six inches of floor space on which to lay the metal flat. Appellee's supervisor directed it be laid on edge and against the wall on the east side of the barn. Appellant and his two other fellow employees followed the instructions. Two men handled the unloading and stacking of each sheet of metal. They took one sheet at a time. Appellee's supervisor and one of intervenor's men worked together. The other two men did likewise. After each sheet was stacked as directed by appellee's supervisor the men would come out of a smaller door in order to avoid interference with each others work. During the stacking process appellee's supervisor on several occasions used a 2 x 4 or 2 x 6 to "kick" the bottom of the sheets back towards the wall. This procedure was witnessed by both appellant and McDonald. It was in this manner that appellee's supervisor and intervenor's employees unloaded and stacked the sheet metal in the narrow space provided.

After the unloading and stacking process had been completed appellee's supervisor proceeded to count the sheets of metal by what the witnesses termed "leafing through them" or pulling them

apart to count them. At the time appellee's supervisor started to count the sheets at the north end of the stack appellant was standing on a dirt floor beyond the north end of the stack as was also one of his fellow employees, Yeager. The other employee of intervenor, McDonald, was back in a little space where he had gone to keep out of the wind. Appellee's supervisor determined he could not count the sheets from the north end and moved to the south end of the stack. The supervisor had his back to appellant when he moved to the south end and while counting the sheets. Appellant then moved into the narrow space beside the stack and continued to stand at about the center of the stack, with his left hand on the sheets, watching the supervisor count. Appellant said nothing to the supervisor during that period. Appellant was waiting for the supervisor to sign the bill of lading. While the supervisor was counting the stack started to fall. Appellant got back as far as he could but was unable to escape. He sustained severe injuries to his left foot, his right leg and substantial general disability.

Appellee's demurrer, in substance, was based on the grounds: Appellant's evidence affirmatively discloses his recovery for common-law damages was precluded by the workmen's compensation act; appellant's evidence failed to disclose appellee was negligent; appellant assumed the risk of conditions which occasioned his injury; if appellee was negligent appellant was likewise guilty of negligence and was barred from recovery.

Touching his right to recover damages instead of compensation appellant relies on G. S. 1949, 44-504 of the workmen's compensation act, the pertinent portion of which reads:

"When the injury or death for which compensation is payable under this act was caused under circumstances creating a legal liability against some person *other than the employer* to pay damages, the injured workman . . . shall have the right to take compensation under the act and pursue his . . . remedy by proper action in a court of competent jurisdiction against such other person." (Our italics.)

Appellant argues the question of appellee's negligence and of appellant's contributory negligence were questions on which reasonable minds might differ and, therefore, those questions should have been submitted to the jury. On the other hand appellee contends that under appellant's evidence he could have recovered compensation from appellee and, therefore, that was his exclusive remedy.

It, of course, is not debatable that if appellant could recover compensation from appellee it was his exclusive remedy. (G. S.

1949, 44-501; *Echord v. Rush*, 124 Kan. 521, 261 Pac. 820; *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 203, 231 P. 2d 239, and cases therein cited.) In that event the question of negligence of either party would become immaterial. We shall, therefore, first consider whether appellant had a valid claim against appellee for compensation.

On this question the parties disagree. Appellant concedes the hauling, unloading and stacking were necessary to constitute a completed delivery where, as here, a change of possession of the thing sold was involved. We pause merely to note this concession as appellant's interpretation of the intention of the parties without discussing its correctness as a general principle of law. Appellant, however, argues there was *no contract* for unloading *and stacking* and hence there can be no recovery of compensation from appellee under G. S. 1949, 44-504. He probably intended to refer to G. S. 1949, 44-503 but we shall consider his contention there was no such contract. We may say at the outset it is difficult to understand this contention if the intention of the parties was as appellant has conceded it to be but we shall examine the evidence.

Appellant testified it was his duty to load and unload the metal. The metal of necessity had to be unloaded somewhere on appellee's premises and in some appropriate manner. Appellant does not contend a proper delivery could have been made by dumping this very thin and heavy sheet metal from the truck. He admits that after arriving on appellee's premises everything that transpired was done under the direction and control of appellee's supervisor and with the latter's assistance. He admits his evidence disclosed the first two loads were placed in the workshop, a place selected by appellee. He concedes those loads were stacked in the manner directed by appellee. The first load was directed to be placed in racks. The second load was directed to be stacked flat on the floor.

Nor is there any dispute about the following facts:

After the second load had been delivered appellee concluded there would be insufficient room to stack the third load in the workshop and he so notified appellant. It thus became necessary for appellee to find a place to put the third load. Appellee's supervisor agreed to select such a place by the time intervenor's employees arrived with the third load. He did so. The entire process of unloading and stacking the three loads of metal was performed precisely as though it was understood by all that the unloading and

stacking under appellee's direction constituted a part of the delivery. No question to the contrary was ever raised. In fact after the first two loads had been unloaded at a place selected by appellee and stacked in accordance with his directions the intervenor believed an additional man should be sent along to assist with the third load of approximately 110 sheets of metal. Intervenor, therefore, instructed appellant to take a third employee along. Under these circumstances we shall not say appellant's evidence did not reasonably disclose an understanding that sale and delivery included unloading *and stacking*. Surely we would not deny a claim for compensation, if one had been filed by appellant against appellee, on the ground no contract for unloading and stacking had been shown under the instant record. Our compensation act does not require an express contract. The conduct of the parties clearly disclosed an agreement of the parties that intervenor's workmen would at least assist in the unloading and stacking of the metal. Moreover they freely did so at a place selected by appellee and in the manner directed by him.

Appellant next contends if there was an agreement intervenor's workmen would unload and stack the metal, then the completed delivery was the work of intervenor and that compensation was recoverable from it, citing *Swift v. Kelso Feed Co.*, 161 Kan. 383, 168 P. 2d 512. That case is not in point here. In it respondent, the seller of feed, was held liable under the compensation act to an employee of an independent delivery agency, engaged by respondent, who was injured on the premises of the vendee, the place of delivery. That case in nowise involved the question whether the workman had a claim for compensation against the purchaser. It determined only that respondent, the seller, who had agreed to deliver the feed in connection with which he had "undertaken to do work" on the premises of the purchaser, was liable for compensation. That case might well be in point if the question here were whether intervenor was liable for compensation. That question, however, as previously indicated, has been adjudicated in appellant's favor.

Appellant next argues work of unloading and stacking in the instant case was *solely that of intervenor, and was no part of appellee's trade or business* and, therefore, he could not have recovered compensation from appellee. We think the correct answer to that contention determines this lawsuit.

Can it rightly be said, as a general proposition, that work of

stacking sheet metal at a proper place on appellee's premises and for his use in building furnaces or in doing sheet metal repair work, or that the work of stacking it in a manner deemed proper by appellee for his use are no part of his own trade or business? We think the question clearly compels a negative answer. If work of that character was no part of appellee's trade or business it is difficult, if not impossible, to conceive of work which would constitute an integral part thereof. Is it conceivable that if appellant had been injured, if employed directly by appellee and while doing this identical work, a claim against appellee for compensation would have been denied on the ground the work was no part of appellee's trade or business? Obviously not.

Appellee was engaged in the business of "Sheet metal repair and installation of heating units." For the prosecution thereof he undertook to obtain the sheet metal in question. He contracted with intervenor to furnish it. In the process of complying with the agreement one of intervenor's workmen was injured. We think such workman would have been entitled to receive compensation from appellee the same as though he had been immediately employed by appellee. (G. S. 1949, 44-503.)

The test, "Whose work was being performed," has been repeatedly applied under varying facts and circumstances, including cases in which the work was only an incident of the trade or business involved. A few of such cases are *Purkable v. Greenland Oil Co.,* 122 Kan. 720, 253 Pac. 219; *Williams v. Cities Service Gas Co.,* 139 Kan. 166, 30 P. 2d 97; *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868; *Bell v. Hall Lithographing Co.,* 154 Kan. 660, 121 P. 2d 281; *Schroeder v. American Nat'l Bank,* 154 Kan. 721, 121 P. 2d 186; *Bailey v. Mosby Hotel Co.,* 160 Kan. 258, 160 P. 2d 701; *Hoffman v. Cudahy Packing Co.,* 161 Kan. 345, 167 P. 2d 613; *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 231 P. 2d 239.

The facts in the above cases have been narrated and analyzed so fully in our decisions it is unnecessary to repeat them here. Presently it is sufficient to say the same test, "Whose work was being performed," has been applied repeatedly whether the case involved a claim for compensation, a so-called common law action for damages or an action for damages under the statute commonly referred as the factory act.

Obviously appellant was doing work of his employer, intervenor, but in so doing he also was performing work which in its very nature and character was just as definitely a part of appellee's

trade or business. Under some circumstances far more debatable with regard to the question of "Whose work was being performed" this court has held the exclusive remedy was under the compensation act. (See list of cases above cited.)

The late Justice Homer Hoch stated the matter clearly for the court in the Hoffman case, *supra,* which was instituted as a damage action but in which we held a claim for compensation was the exclusive remedy. It was there said:

"Another rule of construction here pertinent is that the workmen's compensation act is to be liberally construed. This rule of liberal construction is most frequently invoked by employees who have suffered injury and are seeking their remedy under the act. But no different rule of construction can be adopted where an injured workman for reasons which he regards sufficient seeks a remedy outside the compensation act. In other words, in determining whether the alleged facts make the injury compensable under the act, we have precisely the same issue we would have if the plaintiff were setting up the same facts in an action to recover under the compensation act, and the company was defending on the grounds that the facts as alleged did not make the injury compensable under the act. The same rule as applied to the same facts must govern, whether invoked by the employee or by the employer." (p. 349, 350.)

Appellant relies on *Waterbury v. Riss & Company,* 169 Kan. 271, 219 P. 2d 673. It is not helpful on the point at issue. See the recent case of *Lessley v. Kansas Power & Light Co.,* supra, p. 209, 210.

Appellee asserts the ruling of the district court was also proper for the reason appellant's evidence disclosed appellee was appellant's *special employer* with respect to the particular work out of which the injury arose.

Appellant's petition expressly alleged the work was directed ". . . by an employee of defendant acting within the scope of his employment. . . ." His evidence showed it was so directed. It also proved appellant and his coemployees freely followed such directions without complaint and without challenging appellee's right to exercise such control. The reason for the emphasis given in appellant's brief to the fact the work was done entirely under the direction and supervision of appellee is obvious. That evidence is very properly stressed, in connection with the damage action, for the purpose of absolving, or tending to absolve, appellant from alleged acts of negligence, in some of which he participated, and of other alleged acts of negligence he observed, without objecting thereto. The fact, however, the work is conceded to have been done under appellee's direction and control makes it clear appellee

was appellant's *special employer* with respect to the particular work out of which the injury arose.

In determining the actual relationship of the parties under any employment, the courts will look to all the circumstances involved in the particular case. (*Pottorff v. Mining Co.,* 86 Kan. 774, 122 Pac. 120; *Mendel v. Fort Scott Hydraulic Cement Co.,* supra; *Bell v. Hall Lithographing Co.,* supra.)

The real test whether a person becomes a special employer, of course, is whether he has the right to control and direct the particular activity as a consequence of which the injury occurred and not merely whether he exercised the power of direction. (*Mendel v. Fort Scott Hydraulic Cement Co.,* supra; *Bell v. Hall Lithographing Co.,* supra.)

In the Mendel case we said:

"Our workmen's compensation act does not differentiate between special and general employers. (G. S. 1935, 44-508h.) We think it may properly include both. That there is a difference of views on the question of whether a special employer, in the absence of express statutory provision, is liable for compensation as well as the general employer, cannot be doubted. (See annotations, 3 A. L. R. 1181, 34 A. L. R. 768, and 58 A. L. R. 1467.)

"It has, however, been definitely held, by what we regard as sound authority, that under circumstances similar to those in the instant case, the workmen may look to either or both employers for compensation in the absence of an express statutory provision to the contrary. [Citations]." (p. 724, 725.)

In the Mendel case we held both employers and their insurance carriers liable for compensation. In the Bell case, *supra,* the only question was whether the workman could have claimed compensation from the special employer. We held he could have and that it was his exclusive remedy.

Among our own decisions the Bell case, *supra,* is factually the nearest in point. There the question was whether plaintiff on the pleadings was entitled to recover damages from defendant for violations of the factory act or whether his remedy against defendant was under the compensation act. The reader is referred to the opinion for detailed facts alleged. The most important facts as pleaded were:

Defendant was the Hall Lithographing Company; plaintiff was a general employee of the Santa Fe Trail Transportation Company, a carrier of freight by vehicles; the latter transported freight from defendant's place of business and delivered freight to it; the carrier had employed plaintiff, a man who helped at defendant's plant with

the loading of freight taken therefrom and with the unloading and stacking of freight delivered to it; the petition with respect to who directed plaintiff's work at defendant's plant was similar to the petition and evidence in the instant case; that petition alleged "that the work was done in the way it was done at the request of the defendant. . . ." (p. 665.)

We concluded plaintiff was a *general employee* of the delivering carrier and the *special employee* of the defendant; that his injury arose out of the work directed by the *special employer* and his exclusive remedy against the special employer was under the compensation act.

As previously indicated, our compensation act does not distinguish between special and general employers. It will be observed the statute, G. S. 1949, 44-504, previously quoted, and on which appellant relies as authority to institute a damage action against some negligent person, applies only where the action is against some person other than the employer. This statute clearly indicates the legislature did not intend an action for damages should lie against the employer who caused injury to the workman and who is liable to the workman for compensation.

We have not overlooked cases from other jurisdictions cited in the briefs of the parties including the brief of *amicus curiae*. The contention in the brief of *amicus curiae* pertaining to the subject of delivery has already been treated in the light of the evidence in this particular case and the admissions of appellant on that subject.

Reference is made in the briefs of *amicus curiae*, among other cases, to *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 75 P. 2d 829; and *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430. The accident in the Lehman case did not arise out of and in the course of the respondent's trade or business. The work out of which the accident arose was no part of respondent's trade or business and was entirely under the supervision and control of the independent contractor. The case is not controlling here. See, also, *Spencer v. Marshall*, 107 Kan. 264, 191 Pac. 468, and the Purkable case, *supra*, discussed in the Lehman case, which support the conclusion reached in the instant case. The Bittle case has been overruled. See *Lessley v. Kansas Power & Light Co.*, supra, p. 210.

The opinion has been extended further than was intended and, perhaps, unnecessarily. We shall, however, briefly refer to one other contention made by appellant and in the brief *amicus curiae*.

It, in substance, is that this court should not nullify G. S. 1949, 44-504 by judicial legislation. With that view we are in complete accord. We, however, do not believe the instant decision, or our previous ones, fairly can be .said to have destroyed or impaired its true intent and purpose. We repeatedly have held, and we think rightly, that courts by legislative mandate are required to construe the provisions of the compensation act liberally with a view of awarding compensation to an injured workman wherever it is reasonably possible to do so.

Manifestly, if there is to be reasonable consistency in decisions involving the act courts cannot construe it liberally in favor of compensation where the workman seeks compensation and strictly against compensation when he seeks damages. We believe there is ample room for the operation of G. S. 1949, 44-504 as intended by the legislature; that is, to permit a damage action to be instituted against someone, other than an employer, who negligently has caused injury to a workman and who is not liable to the workman for compensation. We do not think the statute was intended to permit a damage action against the special employer where, as here, the workman may look to either the general or special employer, or to both, for compensation.

The judgment is affirmed.