No. 42,034

FRANCINE MAE SCHAFER, *Appellant,* v. KANSAS SOYA PRODUCTS COMPANY, INC., *Appellee.*

(358 P. 2d 737)

Opinion filed January 21, 1961.

*Samuel Mellinger,* of Emporia, argued the cause, and *John G. Atherton,* also of Emporia, was with him on the brief for the appellant.

*Lawrence Weigand,* of Wichita, argued the cause, and *Everett E. Steerman* and *Elvin D. Perkins,* both of Emporia, and *Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman, J. Ruse McCarthy, Donald A. Bell, Charles C. McCarter, J. L. Weigand, Jr.,* and *Spencer L. Depew,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a wrongful death action (G. S. 1959 Supp., 60-3203) brought by the surviving widow for the benefit of herself and her unborn child pursuant to G. S. 1959 Supp., 44-504, to recover damages arising out of an accident which occurred at the defendant's place of business (a grain elevator) while the truck driven by her deceased husband was being unloaded. Workmen's compensation was recovered from the decedent's general employer, and the trial court sustained a motion to dismiss the action on the ground that the defendant was a special employer of the decedent and the controversy fell within the provisions of the workmen's compensation act. (G. S. 1949, 44-503.)

The question presented is whether the decedent at the time of the accident was a "statutory employee" of the defendant within the contemplation of the workmen's compensation act.

The second amended petition alleged that the plaintiff, Francine Mae Schafer, was a resident of McPherson, Kansas, and the widow of John Clinton Schafer, who died at Emporia, Lyon County, Kansas, on January 16, 1959, as a result of an accident on the premises of the defendant, Kansas Soya Products Company, Inc., a corporation, having its principal place of business at Emporia, Lyon County, Kansas. The decedent was employed by Kumle & Sons of McPherson, Kansas, as a truck driver and on the date of the accident was twenty-nine years of age.

The second amended petition then specifically alleged:

"(5) That on the 16th day of January, 1959, the decedent, while operating an International tractor and Keystone semi-trailer in the course of his employment, picked up a load of soybeans at Falun, Saline County, Kansas, and proceeded to the elevator of the defendant, situated at Emporia, Kansas, for the purpose of delivering said soybeans to the defendant. When the decedent arrived at defendant's elevator, *he was directed by the agents, servants and employees of defendant, acting within the scope of their employment, to drive the tractor-trailer outfit onto the defendant's combination scale and platform* provided for the unloading of grain into a hopper situated at the rear end of the combination scale and platform. *That the decedent drove the said tractor-trailer outfit onto the exact portion of the scale-platform designated, directed and selected by the agents, servants and employees of defendant, and in the manner prescribed and directed by them.* Decedent then left the cab of the tractor-trailer outfit and removed himself from the scale-platform. Thereupon the agents, servants and employees of defendant, by means of a power-driven hoist, commenced to elevate the platform and the tractor-trailer situated thereon for the purpose of unloading the soybeans in the trailer into the hopper described above. The said platform and tractor-trailer were elevated by defendant at an angle and in such a manner that the forward portion of the platform was elevated to a great height forming a steep angle with the area surrounding the platform, thereby placing the tractor-trailer situated on said platform at the same steep angle.

"(6) Plaintiff further alleges that after decedent left the cab of the tractor as above set forth, he proceeded to the area at the rear of the trailer and observed the unloading of the soybeans from the trailer by defendant's employees; that after having observed the unloading of the soybeans as aforesaid for a period of time, the decedent *voluntarily, without any request or direction by or from the defendant, its agents, servants or employees,* picked up a broom and for a brief period assisted in moving a portion of the said soybeans from the far rear area of the trailer into the hopper located directly below the rear of said trailer. Thereafter, while the decedent was standing directly to the rear of said trailer observing the further unloading of said trailer by defendant's employees, the said tractor-trailer outfit suddenly and without warning moved violently down the platform from its elevated position into and against the body of decedent. That the movement of the tractor-trailer outfit forced and carried decedent's body backwards and into

and against another truck that was situated a short distance to the rear of the area in which decedent's truck was being unloaded. That decedent suffered injuries thereby which resulted in his death, which injuries and death were proximately caused by the defendant as hereinafter set out.

"(7) That *from the time defendant drove his tractor-trailer outfit into defendant's elevator and approached the unloading area, the agents, servants and employees of defendant directed and controlled the movement and manner of operation of the tractor-trailer outfit.* That at all times after decedent left the cab of the tractor as above described, decedent did not touch, handle or in any manner exercise any control over the tractor-trailer outfit. That decedent did not at any time touch, handle, operate or in any manner exercise any control or direction over the platform, scale or hoist upon which the tractor-trailer outfit was placed, and that such injuries therefrom were not caused by or due to any fault or negligence on the part of the decedent, or any person or persons other than the servants, agents and employees of the defendant.

"(8) Plaintiff further alleges that said tractor-trailer outfit would not have broken loose from its position on the elevated platform and descended down and backwards into and against the decedent if due care had been used and exercised by the defendant, its agents, servants and employees. That all of the facts and circumstances concerning the construction, inspection, servicing, maintenance and operation of said scale, platform and hoist are peculiarly and exclusively within the knowledge of defendant, its agents, servants and employees and not within the knowledge of the plaintiff.

"(9) *That at all times material herein the tractor-trailer outfit and the scale, platform and hoist were solely and exclusively within the exclusive possession and control of the defendant, its agents, servants and employees during the time in which the negligent acts of the defendant occurred and at the time decedent was injured thereby.*

"(10) That plaintiff does not know and, therefore, does not attempt to allege or describe the specific acts of negligence of which defendant may have been guilty and that may have been the proximate cause of the injuries and resulting death of decedent, but plaintiff alleges that the release and descent of the tractor-trailer outfit down the platform and into and against the body of decedent was an occurrence which could not have taken place except for some act or acts of negligence in failing to provide safe and adequate equipment for the unloading of decedent's trailer and in failing to properly operate said equipment while decedent's trailer was being unloaded. That the release, escape and descent of the tractor-trailer outfit down the platform and into and against the body of the decedent and the injuries and resulting death of decedent were the direct result of some act or acts of negligence on the part of defendant, its agents, servants and employees, while in the exclusive possession and control of the said tractor-trailer outfit and the scale-platform and hoist used in unloading said tractor-trailer outfit." (Emphasis added.)

It was alleged at all times material to the cause of action the agents, servants and employees of the defendant were acting at the

direction of the defendant, for and on behalf of the defendant, and within the scope of their employment. Further allegations are immaterial to relate.

The plaintiff's cause of action is challenged by a motion to dismiss. The ground material herein is that the court does not have jurisdiction of the subject matter of the action. The motion and affidavits attached thereto disclose that the defendant is covered by the workmen's compensation act, and that the plaintiff herein filed a claim and recovered workmen's compensation from Kumle & Sons and its insurance carrier. The award was based upon the death of the plaintiff's husband. These facts are admitted by the plaintiff.

The trial court, relying upon *Bright v. Bragg,* 175 Kan. 404, 264 P. 2d 494, sustained the motion to dismiss on the ground that the exclusive remedy available to the plaintiff was under the workmen's compensation act, G. S. 1949, 44-503—that she could have successfully maintained a claim for compensation against the defendant for the death of her husband. From this order the plaintiff has duly perfected an appeal.

Procedurally, the question of the trial court's jurisdiction to hear the action was properly raised by a motion to dismiss upon the authority of *Elam v. Bruenger,* 165 Kan. 31, 193 P. 2d 225. The order of the trial court dismissing the action is a final order and appealable. (*Elam v. Bruenger,* supra.)

The appellee seeks to avoid responsibility for the alleged negligent acts of its employees by invoking the provisions of G. S. 1949, 44-503 (Subcontracting). Under the provisions of the workmen's compensation act an employer subject to the act is not liable for any injury for which compensation is recoverable under the act. (G. S. 1949, 44-501.) Touching her right to recover damages instead of compensation the appellant relies on G. S. 1959 Supp., 44-504, of the workmen's compensation act.

The appellant having conceded that the appellee is covered by the workmen's compensation act, our inquiry in this case is limited to whether the allegations of the second amended petition disclose that the appellant could have successfully maintained a claim for compensation against the appellee under G. S. 1949, 44-503 (*a*).

The appellee contends the decedent became the special employee of the appellee after he arrived at the appellee's elevator with his tractor-trailer outfit, and by reason thereof his widow could have obtained a workmen's compensation award against the appellee.

The appellant's cause of action is based upon the doctrine of *res ipsa loquitur*. Seizing upon this fact the appellee argues:

"One of the essential elements for the application of the doctrine of *res ipsa loquitur* is the control of the instrumentalities involved (*Starks Food Market, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102). Obviously appellant inserted in her petitions the allegations relative to appellee's control over the operation of the truck in and about appellee's premises for the purpose of supplying that necessary element in support of the applicability of the doctrine of *res ipsa loquitur*, but in so doing brought the accident in question clearly and definitely under the provisions of G. S. 1949, 44-503, by supplying the answer to the test and asserting that the defendant had the right to control and direct the particular activities, as a consequence of which this injury occurred."

G. S. 1949, 44-503 (*a*), provides in substance that where any person *contracts* with any other person to do work, which is part of the principal's trade or business, he shall be liable to pay compensation to any injured workman *employed in pursuance of the contract* to the same extent as though such workman had been immediately employed by the principal.

The purpose of the foregoing section, and the legal approach under the workmen's compensation act to the question presently under consideration, has been reviewed in the recent case of *Durnil v. Grant*, 187 Kan. 327, 356 P. 2d 872. The reader is directed to pages 333, 334 and 335 of that opinion, the material portions of which are incorporated herein by reference. Other cases are accumulated in *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 231 P. 2d 239; and *Whitaker v. Douglas*, 179 Kan. 64, 292 P. 2d 688, where the applicable rules are also discussed and applied.

Notwithstanding the fact this court is committed to the rule of liberal construction of the workmen's compensation act in order to award compensation to an injured workman in cases where it is reasonably possible to do so within the provisions of the act, consistency of decisions involving interpretation of the act cannot be maintained by construing it liberally in favor of compensation where the workman seeks compensation and strictly against compensation when he seeks damages. In other words, the same rule must govern a given set of facts whether invoked by an employer or an employee. (*Bright v. Bragg*, supra; and *Shuck v. Hendershot*, 185 Kan. 673, 347 P. 2d 362.)

The appellee relies primarily upon *Bright v. Bragg*, supra. Since the truck was still on the scale-platform being unloaded when the accident occurred, the appellee argues delivery was not completed

until all the soybeans were removed from the truck, and that placing the truck on the platform was an essential part of the unloading and was done by the decedent under the direction and control of the appellee. It is argued the placement of the truck "onto the exact portion" of the unloading platform was a part of and a reasonable incident to the actual unloading.

It is clear from the allegations of the second amended petition that it was the responsibility of the decedent to *deliver* the soybeans to the appellee's place of business, and that it was the responsibility of the appellee to *unload* the truck.

In *Bright v. Bragg,* supra, the appellant was a truck driver for a furnace company which sold three loads of sheet metal to the appellee to be delivered to *and unloaded on* the appellee's premises. The appellant's principal duties were loading, hauling and unloading furnaces and sheet metal for his employer. He recovered workmen's compensation from the furnace company and brought a common law action to recover damages for personal injury sustained by him while unloading and stacking the sheet metal on the appellee's premises. The appellant and another employee of the furnace company unloaded and stacked two loads of sheet metal on the appellee's premises at the particular place and in the manner directed by the appellee. The appellee's supervisor ordered and directed the appellant and the other workmen in all details concerning the unloading and stacking of the sheet metal, and they followed these directions. The next day a third load was delivered and unloaded with the assistance of an additional employee from the furnace company. The appellee's supervisor directed the manner in which the sheet metal was to be unloaded and stacked. It is clear the appellant and the two other fellow employees followed these instructions. In the process of counting the sheets of metal by "leafing through them" the stack, standing vertically on edge, fell over and injured the appellant.

There the appellant conceded the hauling, unloading and stacking were necessary to constitute a complete delivery, and he testified it was his duty to load and unload the metal. The entire process of unloading and stacking the three loads of metal was performed precisely as though it was understood by all that the *unloading and stacking under the appellee's direction constituted a part of the delivery.* Under these circumstances the court held the appellant was a special employee of the appellee at the time he received his injuries.

The principal contention of the appellant was that there was *no contract* for unloading and stacking the metal; hence, there could be no recovery of compensation from the appellee under G. S. 1949, 44-503. But the court said:

". . . Our compensation act does not require an express contract. The conduct of the parties clearly disclosed an agreement of the parties that intervenor's [the furnace company's] workmen would at least assist in the unloading and stacking of the metal . . ." (p. 409.)

The court applied the test of "Whose work was being performed" and stated:

"The real test whether a person becomes a special employer, of course, is *whether he has the right to control and direct* the particular activity as a consequence of which the injury occurred and not merely whether he exercised the power of direction . . ." (Emphasis added.) (p. 412.)

Characteristics which distinguish the case of *Bright v. Bragg,* supra, from the instant case are: (1) In *Bright* it was the duty of the workman to unload and stack the sheet metal, while here it was the duty of the appellee to perform the unloading; (2) In *Bright* the appellant worked under the constant direction and control of the special employer in unloading and stacking the metal, while here the only direction given to the decedent at any time was in connection with the driving of his tractor-trailer outfit upon the platform; (3) In *Bright* the workman's principal employer directed him to perform the unloading operations, while here Kumle directed only that the decedent *deliver* the soybeans to the appellee; and (4) In *Bright* it was understood by all concerned that the unloading and stacking *under the special employer's direction* constituted a part of delivery, while here this element is lacking.

The fundamental premise upon which liability is predicated in the workmen's compensation act under 44-503 *(a)*, *supra, is the existence of a contract between the two employers.* Here the decedent was employed to do but one thing and that was *to deliver* his load of soybeans to the appellee. There is nothing to indicate an agreement or understanding between Kumle and the appellee, or between Kumle and the decedent that the decedent was to do anything else. In the instant case the conduct of the parties is insufficient to disclose the existence of any agreement. It cannot be said the appellee in the instant case *contracted* for Kumle to do a portion of its work.

The appellee relies upon *Lessley v. Kansas Power & Light Co.,* supra; and *Whitaker v. Douglas,* supra, both of which are actions at common law to recover damages for personal injuries alleged to

have been caused by the negligence of the principal contractor, but clearly in each of these cases the contractors entered into an agreement with a subcontractor to perform a part of their work, and by reason thereof the exclusive remedy of the workman was under the workmen's compensation act.

In *Shuck v. Hendershot,* supra, relied upon by the appellee, it was conceded by the workman that at the time and place of his injury two of the defendants, Hendershot and Singleton, were his special employers, and he was thereby precluded from recovering in a common law action against them.

We hold the decedent in the instant case was not a "statutory employee" within the contemplation of the workmen's compensation act under G. S. 1949, 44-503 (*a*). He was not a special employee of the appellee at the time and place of the accident which caused his death. The decedent was a truck driver directed to haul a load of soybeans to the appellee's elevator for the purpose of *delivering* the soybeans. After he arrived at the elevator he was shown where to drive his truck so that the appellee's employees might thereafter proceed to unload the truck. Having driven the truck to the designated place, the decedent then left the truck and thereafter had nothing further to do with its operation or the operation of the unloading apparatus. The voluntary act of the decedent in picking up a broom and briefly assisting in the moving of some of the soybeans from the back of the trailer into the hopper, did not thereby give the appellee the right to control and direct the decedent's activities or amount to conduct sufficient to disclose an agreement between Kumle and the appellee. These were voluntary acts on the part of the decedent and were so alleged. Thereafter, while the decedent was standing behind the truck and watching the further unloading of the trailer by the appellee's employees, the truck moved down the platform and caused the decedent's death.

The petition makes it clear that after the truck was placed on the platform, it was then in the exclusive control of the appellee. The appellant, being unable to describe the specific acts of negligence which caused the accident, alleged sufficient facts to invoke the doctrine of *res ipsa loquitur,* and she is entitled to prosecute this action for the wrongful death of her deceased husband pursuant to the provisions of G. S. 1959 Supp., 44-504.

The judgment of the lower court is reversed.