No. 44,393

FREDDIE M. ATWELL, (Plaintiff and Claimant), v. MAXWELL BRIDGE COMPANY and THE TRAVELERS INSURANCE COMPANY, *Appellees*, FREETO CONSTRUCTION CO., INC., and LIBERTY MUTUAL INSURANCE COMPANY, *Appellants*.

(409 P. 2d 994)

Opinion filed January 22, 1966.

*Randall D. Palmer,* of Pittsburg, argued the cause, and *Paul L. Wilbert, Alois R. Bieber* and *Garry W. Lassman,* of Pittsburg, were with him on the brief for the appellants.

*R. L. White,* of Pittsburg, argued the cause, and *R. L. Letton* and *J. Curtis* Nettels, of Pittsburg, were with him on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal stems from a workmen's compensation case which involved the claimant, Freddie M. Atwell, the respondent (appellee), Maxwell Bridge Company, and its insurance carrier, The Travelers Insurance Company, and the impleaded respondent (appellant), Freeto Construction Co., Inc., and its insur-

ance carrier, Liberty Mutual Insurance Company. Hereafter the parties will be referred to as Atwell, Maxwell and Freeto respectively. Atwell is not a party to this appeal, nor is his right to or the amount of the award questioned.

Basically, the issue presented on appeal is whether or not a factual situation is presented to which the provisions of K. S. A. 44-503 (subcontracting) apply.

Atwell originally filed a claim for compensation against Maxwell who then, under K. S. A. 44-503 (e), impleaded Freeto, alleging that Maxwell was the principal contractor and Freeto was the subcontractor. Freeto was a party and appeared at all stages of the proceedings. A complete hearing was conducted by the examiner. Freeto cross-examined the various witnesses but introduced no evidence on its own behalf. At the time the examiner entered the award he found that Atwell was an employee of Maxwell, that Freeto was not a subcontractor, and sustained Freeto's motion to be discharged from the case. The order of the director generally affirmed the award of the examiner, including the dismissal of Freeto. Both Atwell and Maxwell appealed to the district court. After reviewing the evidence, the district court found that Atwell suffered an accidental injury arising out of and in the course of his employment while carrying heavy timbers on a bridge construction job; that at the time of the injury the general contract for the bridge construction was held by Maxwell as principal contractor pursuant to a general contract with the highway commission of Kansas, with the actual work, insofar as Atwell's employment thereon was concerned, being done by Freeto as subcontractor, all as defined in K. S. A. 44-503 (a), pursuant to a subcontract between Maxwell and Freeto; that at the time of the injury Atwell was an employee of Freeto, his only relation to Maxwell being that he was paid on its payroll pursuant to a clause in the subcontract; and that Atwell, within three days of his injury, gave notice to Cooper, a Freeto employee who made a written report to the Freeto company and then to Maxwell, as directed by Freeto.

The court further found:

"5. That timely written demand for compensation was made upon Maxwell who thereafter properly impleaded Freeto pursuant to K. S. A. 44-503 (e), which latter company appeared at the first hearing before the Workmen's Compensation Examiner on June 8, 1964, and at all subsequent proceedings since being impleaded.

• • • • • • • • • • • • •

"11. That such compensation and costs are accordingly awarded this date, Maxwell to be primarily liable to claimant therefor as principal or general

contractor pursuant to K. S. A. 44-503 (*a*) and the respondent against whom claimant elected to proceed, subject to the right to recover payments made hereunder from the subcontractor, Freeto, as provided by K. S. A. 44-503 (*b*) and (*f*).

"12. The Order of the Workmen's Compensation Examiner and Director dismissing Freeto as a party to this proceeding is set aside and held for naught."

Freeto appeals from the findings, rulings and decision of the district court.

In substance, K. S. A. 44-503 (*a*) provides that where any person contracts with any other person to do work that is part of the principal's trade or business, he shall be liable to pay compensation to any injured workman employed in pursuance of the contract to the same extent as though such workman had been immediately employed by the principal. Other portions of the statute pertinent to this appeal are:

"(*b*) Where the principal is liable to pay compensation under this section, he shall be entitled to indemnity from any person who would have been liable to pay compensation to the workman independently of this section, and shall have a cause of action therefor.

"(*c*) Nothing in this section shall be construed as preventing a workman from recovering compensation under this act from the contractor instead of the principal.

. . . . . . . . . . . . . .

"(*e*) A principal contractor, when sued by a workman of a subcontractor, shall have the right to implead the subcontractor.

"(*f*) The principal contractor who pays compensation to a workman of a subcontractor shall have the right to recover over against the subcontractor."

The purpose of the statute is to give employees of a subcontractor a remedy against the principal contractor and prevent employers from avoiding liability to an injured workman by contracting with an independent contractor to do a portion of the work undertaken by the principal. (*Hanna v. CRA, Inc.,* 196 Kan. 156, 409 P. 2d 786; *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 231 P. 2d 239; *Bailey v. Mosby Hotel Co.,* 160 Kan. 258, 160 P. 2d 701.) The statute, being primarily for the benefit of the injured workman, also provides protection when no recovery can be had against the subcontractor or its insurance carrier because they are financially unable to pay the compensation award. (*Coble v. Williams,* 177 Kan. 743, 282 P. 2d 425.)

In *Durnil v. Grant,* 187 Kan. 327, 356 P. 2d 872, this court observed that the foregoing statute extends liability for the benefit of workmen who under the common law would not normally be

considered employees. It therefore is often said to provide for the creation of "statutory employees." (Also, see 1 Larson, Workmen's Compensation, § 49.12.)

On appeal of a workmen's compensation case, the jurisdiction of the supreme court is limited to consideration of questions of law; whereas, regarding questions of fact, the record is reviewed to determine whether or not it contains substantial, competent evidence to support the district court's finding, and in so doing, this court reviews and considers all the evidence in the light most favorable to the prevailing party below. If the finding of the district court is supported by substantial, competent evidence, the finding is conclusive and will not be disturbed on appeal. (*Ratzlaff v. Friedeman Service Store*, 195 Kan. 548, 407 P. 2d 513; *Durnil v. Grant*, supra; *Coble v. Williams*, supra.)

Freeto contends that under the facts Atwell was an employee of Maxwell instead of Freeto and therefore Freeto was not subject to the impleading clause, 44-503 (*e*), or the other provisions of the statute. Conversely, Maxwell contends the district court's findings that Atwell was an employee of Freeto and that Maxwell was the principal contractor and Freeto the subcontractor under 44-503 were supported by substantial, competent evidence and, therefore, cannot be disturbed on appeal.

In disposing of Freeto's contentions, two determinations made by the district court demand our attention: (1) that Atwell was an employee of Freeto; (2) that Maxwell was the principal contractor and Freeto the subcontractor under K. S. A. 44-503.

In examining Freeto's contention regarding Atwell's employment status, we cannot say that the evidence before the district court was undisputed and free from conflict; therefore, those facts most favorable to Maxwell, the prevailing party below, and tending to support the findings of the district court will be reviewed in some detail.

By the testimony of Maxwell, Cooper and Atwell, the following facts were established: On July 12, 1963, Charles E. Maxwell, d/b/a Maxwell Bridge Company, as general contractor, entered into a contract with the highway commission of Kansas for the construction of a bridge in Cherokee county. Mr. Maxwell subcontracted the bridge work to Freeto and a written agreement was entered into between Maxwell and Freeto. Following the signing of the agreement, Freeto decided one Calvin Cooper would be the

job superintendent. The employees on the job were hired by Cooper or someone from Freeto. Freeto determined the amount of wages the men were to receive and the manner in which overtime wages were to be computed. Also, Freeto authorized Cooper to turn in weekly expenses. Maxwell had no supervisory personnel on the job, nor did it have anything to do with the determination of the working hours. Freeto did not rent any equipment from Maxwell in doing the job. The payroll, including Cooper's wages, Social Security, unemployment tax and insurance charges applicable to the job were paid directly by Maxwell and deducted from the money due Freeto under the subcontract. Cooper had been employed by Freeto for eleven years. He first learned of the Cherokee county job from Freeto's general superintendent of bridges while on another Freeto job in Moline, Kansas. Later, Freeto's general superintendent informed Cooper that an agreement had been reached between Maxwell and Freeto and that Cooper's crew was to "go down to this job for Maxwell." In his crew Cooper had five laborers, including Atwell, who followed him from job to job. Cooper was given a set of plans for the job by Freeto and, as job superintendent, put up the bridge. At his first meeting with Maxwell, Cooper was directed to turn in time sheets for the job to Maxwell. He was not told how to put up the bridge, inasmuch as he had erected many bridges. Cooper received no instructions from Maxwell. At various times when Cooper had no work for his men on the Maxwell job he would contact Freeto to see if it needed help on other Freeto jobs. Atwell had previously worked under Cooper for Freeto and went to work on the Maxwell job at Columbus about October 7 or 8, 1963. He learned of the job from Cooper while at Moline. He did not talk to Maxwell before going to work but received from Cooper instructions regarding the work to be performed. Atwell received thirteen weekly payroll checks from Maxwell, representing wage periods ending October 12 through November 30, 1963, and December 21, 1963, through January 18, 1964. The date of his accident was November 30, 1963. Atwell told Cooper about his injury and Cooper made a report thereof to Freeto, and subsequently to Maxwell, as directed by Freeto. When Atwell reported to a doctor and entered the hospital at Columbus on December 4, 1963, the record showed his employer as Freeto Construction Company, and the hospital records at the KU Medical Center on March 30, 1964, reflected the same.

In determining the actual relationship of parties under the workmen's compensation act, the courts do not regard a single fact as conclusive but look to all the facts and circumstances of a particular case. (*Durnil v. Grant,* supra; *Bright v. Bragg,* 175 Kan. 404, 264 P. 2d 494.)

Keeping in mind the foregoing rules, was Atwell an employee of Maxwell, as urged by Freeto? We think not. In workmen's compensation cases this court has applied master-servant rules in determining whether or not an employer-employee relationship existed. The general rule is that a master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (*Evans v. Board of Education of Hays,* 178 Kan. 275, 278, 284 P. 2d 1068.) It is not the exercise of direction, supervision or control over a workman which determines whether he is a servant or an independent contractor, but the right to exercise such direction, supervision or control. (*Bowler v. Elmdale Developing Co.,* 185 Kan. 785, 787, 347 P. 2d 391; *Schroeder v. American Nat'l Bank,* 154 Kan. 721, 121 P. 2d 186; *Davis v. Julian,* 152 Kan. 749, 756, 107 P. 2d 745.) The necessity of the control element was also recognized in *Henderson v. Sutton's Food City,* 191 Kan. 145, 379 P. 2d 300.

Freeto strenuously argues that by Atwell and other employees on the job being paid by Maxwell on Maxwell Bridge Company checks, and Social Security and withholding tax deductions being made on the Maxwell payroll, coupled with the fact they were under Cooper's supervision, show the retention of authority, control and management of the job by Maxwell; thus, Atwell was the immediate employee of Maxwell and not Freeto. Freeto seizes upon the fact that the payroll was carried by Maxwell and *ipso facto* this resulted in Maxwell's being the employer of the men on the job. The fallacy of such argument is demonstrated in that the control test referred to above is completely ignored. Freeto's argument further overlooks the evidence that Cooper was designated as job superintendent by Freeto, and that the employees on the job, including Atwell, were hired by Cooper or someone from Freeto. Also, Maxwell had no supervisory personnel on the job. All wages, in-

cluding those of Cooper, although paid by Maxwell, were deducted from money due Freeto under the subcontract agreement. We have no difficulty concluding that there was ample evidence showing that the right to exercise direction, supervision and control over Atwell rested with Freeto, acting through Cooper as job superintendent—not with Maxwell. Furthermore, the foregoing facts, together with the provisions of the written contract between Maxwell and Freeto, hereinafter set out, reveal substantial evidence supporting the district court's finding that Atwell was an employee of Freeto at the time of his injury.

In view of our conclusion above we turn our attention to the relationship between Maxwell and Freeto. Freeto acknowledges that this is not a "loaned employee" or "special employer" case (*Hobelman v. Krebs Construction Co.*, 188 Kan. 825, 366 P. 2d 270; *Bright v. Bragg*, supra; *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868), nor does Freeto seriously contend that it was not engaged in work which constituted a part of Maxwell's trade or business. We, therefore, need not give attention and attempt to apply the rules stated in such cases as *Hanna v. CRA, Inc.*, supra, *Henderson v. Sutton's Food City*, supra, *Durnil v. Grant*, supra, and *Coble v. Williams*, supra.

The relationship between Maxwell and Freeto was established by the provisions of their written contract. The terms thereof designated Maxwell as "contractor" and Freeto as "subcontractor." The contract provided that Freeto was to furnish all materials, supplies and equipment, with certain exceptions, and perform all labor required for completion of the work in accordance with the provisions of the general contract between Maxwell and the highway commission. Freeto agreed to obtain and keep in force at its own expense such insurance as Maxwell was required to carry, and to hold Maxwell harmless from any liability for damage to the work or for injury or damage to persons or property. The contract provided that the work was to be performed by Freeto with the assistance of workmen under its immediate superintendence, and was not to be sublet except with Maxwell's consent. Partial payments were to be made by Maxwell as the work progressed. Specifically, provision was made whereby Maxwell could deduct from payments due Freeto the amount of any indebtedness due Maxwell for cash advances, supplies, materials, *labor*, insurance, equipment rental or other proper changes against Freeto's work. Other por-

tions of the contract related to commencement and completion of work, changes in the original contract, delays, extra work, and schedule of work and prices.

Article X of the agreement referred to special conditions and provided that certain materials which were to be used by Freeto had already been contracted for by Maxwell, and that Maxwell would pay for the material and deduct the cost from monies due Freeto. Paragraph 3 of article X provided:

"The Contractor will pay the labor payroll for all labor on the job site from payroll lists submitted by Subcontractor or his representative. The total cost of the labor paid including payroll taxes and insurance will be deducted from estimates due the Subcontractor."

An examination of the contract reveals the terms thereof are clear and unambiguous. Its construction, therefore, was a question of law for the district court as well as this court. (*Pan American Petroleum Corporation v. Cities Service Gas Co.*, 191 Kan. 511, 382 P. 2d 645.) The true nature and character of an instrument is not determined by the name attached thereto but by the intent of the parties as reflected by the terms or the contents thereof. (*Magnusson v. Colorado Oil & Gas Corp.*, 183 Kan. 568, 331 P. 2d 577.)

Freeto's principal complaint is that although the contract specified that Freeto was to furnish all labor, supplies and equipment, and that work was to be done by Freeto with workmen under the latter's supervision, paragraph 3 of article X, in effect, nullified the labor and work portions thereof. Freeto argues that paragraph 3 changed the agreement from a true subcontract for *labor*, material and equipment to simply an agreement whereby Freeto was to furnish equipment and a part of the material for the job. Were we to adopt Freeto's argument, we would be compelled to say that the labor provisions of the contract made Maxwell the employer of Atwell. This we cannot do.

To support its argument, Freeto relies on the decision of this court in *Attebery v. Griffin Construction Co.*, 181 Kan. 450, 312 P. 2d 598. After a careful reading thereof, we are inclined to believe the case is authority to the contrary. There it was agreed between the principal contractor (Wea) and the subcontractor (Griffin) that Wea would carry all workmen on its payroll. In the course of the opinion this court said:

"The lower court was justified from all this evidence in assuming that Wea, by carrying the payroll on this particular sewer job, was participating in a fictional scheme to circumvent labor difficulties only with no intention that the relationship of the parties should be that of anything other than principal and

contractor. Many other facts appear in the record too numerous to mention indicating that as between Griffin and Wea, Griffin was regarded as the subcontractor. . . ." (p. 465.)

The reason for such a provision being inserted in the contract in the instant case is immaterial to the decision herein reached. The simple fact is that although Maxwell paid for all labor on the job from payroll lists submitted by Freeto, the total cost thereof, including taxes and insurance, was ultimately borne by Freeto.

We therefore conclude that paragraph 3 of article X of the contract did not in and of itself manifest an intention that the relationship of Maxwell and Freeto was other than that of principal and subcontractor under K. S. A. 44-503 (a). All portions of the agreement when construed together readily disclose that the parties intended that labor on the job be included as a part of the subcontract agreement.

Additionally, there is ample evidence in the record to indicate that the provisions of the written contract were being substantially performed by the parties at the time of Atwell's injury. In fact, the trial court found that the actual work on the job was being done by Freeto as subcontractor under K. S. A. 44-503 (a) pursuant to the contract between Maxwell and Freeto. We are of the opinion that the trial court correctly found the relationship between Maxwell and Freeto to be that of principal and subcontractor.

The workmen's compensation act establishes its own procedure and provides a remedy that is complete and exclusive. (*Peschka v. Wilkinson Drilling Co.*, 192 Kan. 126, 386 P. 2d 509; *Tompkins v. Rinner Construction Co.*, 196 Kan. 244, 409 P. 2d 1001.) Here Atwell, by electing to proceed against Maxwell, provided Maxwell with the procedural tool (44-503 [e]) which permitted the impleading of Freeto. From what has been said herein, the district court properly determined that Freeto was subject to the impleading clause, 44-503 (e), and the other provisions of the statute.

Freeto's other contentions have been examined and found to be without merit. The judgment of the district court is affirmed.