**Floyd H. DOYLE, Plaintiff,**

v.

**MISSOURI VALLEY CONSTRUCTORS, INC., a Delaware corporation, Defendant and Third-Party Plaintiff,**

v.

**WALTER FLANAGAN AND COMPANY, a Colorado corporation, Third-Party Defendant.**

**Civ. A. No. 67–C–464.**

United States District Court D. Colorado.

Aug. 5, 1968.

See also D.C., 288 F.Supp. 125.

McCarthy & Reneau, Thomas E. Mc-Carthy, Denver, Colo., for plaintiff.

Kenneth C. Groves, Denver, Colo., for defendant and third-party plaintiff.

Sheldon & Nordmark, Richard C. McLean, Denver, Colo., for third-party defendant.

### MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

On March 20, 1967, the plaintiff, an employee of Walter Flanagan and Company, a ready-mix concrete supplier, was injured while delivering a load of concrete to a construction site where the defendant, as general contractor, was engaged in constructing a building for Public Service Company of Colorado. The plaintiff claimed and received workmen's compensation from his immediate employer, and then filed this common law action for damages against the general contractor, Missouri Valley Constructors, Inc. He alleges that his injuries were caused by the negligence of one of Missouri Valley's employees. The defendant has moved for a summary judgment of dismissal on the grounds that at the time of the accident the plaintiff was its statutory employee under the Colorado Workmen's Compensation Act, and that this suit is barred by the provisions of that Act. This question has been argued and briefed by the parties, and decided from the bench adversely to the defendant. This opinion will amplify and, we hope, serve to validate that pronouncement.

The essential facts are not in dispute. The agreement between Missouri Valley and Flanagan Company required the latter to deliver ready-mixed concrete to the job site at a fixed price per cubic yard. The agreement was in the form of a purchase order for goods, it described the parties as "purchaser" and "seller," and the concrete was listed as "merchandise." Colorado Sales Tax was charged to the buyer for each order of concrete delivered. Under the agreement, the concrete was batched and mixed at Flanagan's plant in accordance with the contract specifications and was delivered to the job site in a ready-mix truck. While on the job site, Flanagan's drivers poured the concrete into forms previously prepared by the general contractor. They had nothing to do with tamping, leveling, smoothing or finishing the concrete or removing the forms after the concrete had set. In short, their sole responsibility was to deliver the concrete to the job and put it where the general contractor directed. Plaintiff was injured when one Dallas Decker, an employee of the defendant, unexpectedly pulled from the truck an attached cement chute over on his hand while he (plaintiff) was starting to align it preparatory to delivering the

load of concrete to the job. He seeks to recover damages not recoverable under the Colorado Workmen's Compensation Act.

In view of the foregoing, it is clear that the plaintiff was not the *common law* employee of Missouri Valley Constructors. However, like many other such statutes, the Colorado Workmen's Compensation Act extends the concepts of "employer" and "employee" far beyond the meaning of those terms at common law. The embattled area is the Colorado Act, which was passed to insulate contractors from actions by employees of subcontractors on the job. This provides in part as follows:

"81–9–1(1). Any person, company, or corporation operating or engaged in or conducting any business by * * * contracting out any part or all of the work thereof to any * * * subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be and be an employer as defined in this chapter, and shall be liable as provided in this chapter to pay compensation for injury or death resulting therefrom to said * * * subcontractors and their employees * * *."

"81–9–1(2). If said * * * subcontractor shall himself be an employer, as defined in this chapter * * *, and shall before commencing such work insure, and shall keep insured his liability for compensation as provided in this chapter, neither said * * * subcontractor, its employees or its insurer shall have any right of contribution or action of any kind * * * against the person, company or corporation operating or engaged in conducting any business by * * * contracting out any part or all of the work thereof."

The defendant contends that it was engaged in the construction business by subcontracting out part of its work to the plaintiff's employer; that plaintiff's employer was its subcontractor; and that the plaintiff's suit is therefore barred by the provisions of C.R.S.1963, 81–9–1(2).

The plaintiff, of course, argues that he does not fall within these statutory provisions because:

1. His immediate employer, Flanagan and Company, was a supplier of goods and not a subcontractor under 81–9–1.

2. Even if Flanagan and Company were held to be a subcontractor, it was not performing work which would ordinarily be accomplished through the defendant's employees, as required by Colorado decisional law.[1]

This is a case of first impression under Colorado law. Having no guides, we have had to examine such evidences as are available as to how the Colorado Supreme Court would decide it, together with authorities from other jurisdictions.

We have concluded from this study that authority, reason and justice support the conclusion that the plaintiff's immediate employer should not be considered a "subcontractor" within the meaning of C.R.S.1963, 81–9–1. Inasmuch as the present motion can be disposed of on this basis, there is no necessity for reaching the plaintiff's second contention.

While statutory employer provisions have been liberally construed by the courts, it is not every relationship that constitutes a contract within the purview of the Act. Thus, the vast majority of courts who have been confronted with the problem have held that the term "subcontractor" was not intended to include suppliers of goods and materials. See, e. g., Bendure v. Great Lakes Pipe Line Co., 199 Kan. 696, 433 P.2d 558 (1967); Roland v. Lloyd E. Mitch-

1. See, e. g., Pioneer Construction Co. v. Davis, 152 Colo. 121, 381 P.2d 22 (1963). But cf., Gardner Motor Co. v. Feistel,

160 Colo. 135, 414 P.2d 915 (1966). See generally, 1A Larson's Workmen's Compensation Law § 49.12.

ell, Inc., 221 Md. 11, 155 A.2d 691 (1959); and Rebisso, Inc. v. Frick, 94 Ohio App. 45, 108 N.E.2d 282 (1952). See generally, 99 C.J.S. Workmen's Compensation § 107, and cases cited therein. These decisions rest not only upon the legal distinction between a "subcontractor" and a "supplier," but also upon recognition that if the statute were applied to ordinary sales of merchandise, business dealings would be seriously hampered. Bendure v. Great Lakes Pipe Line Co., 199 Kan. 696, 433 P.2d 558, 564 (1967). Since there is no indication that the Colorado General Assembly intended to cover suppliers as well as subcontractors, we must assume that the Colorado courts would adhere to the majority view.

The question of whether a ready-mix concrete dealer should be classified as a supplier or a subcontractor poses a more difficult problem. We are aware of only two cases which are directly on point, and they reach contrary results. The case relied upon by the defendant is Whitaker v. Douglas, 179 Kan. 64, 292 P.2d 688 (1956). This held an employee of a ready-mix concrete company to be a statutory employee of the general contractor under the provisions of the Kansas Workmen's Compensation Act, G.S. 1949, 44–503. The Kansas Supreme Court gave the statute a broad construction holding that it covered all suppliers who had contracted to *deliver* and *unload* goods on the principal's premises.[2] Bright v. Bragg, 175 Kan. 404, 264 P.2d 494 (1953). Only those suppliers who delivered but did not unload the goods

were held outside the statutory employer provisions. Schafer v. Kansas Soya Products Co., 187 Kan. 590, 358 P.2d 737 (1961). This broad view of "statutory employee" has not had acceptance. Indeed, the majority of courts reject it. See generally, 99 C.J.S. Workmen's Compensation § 107.

A second reason for rejecting the *Whitaker* decision is that it has been cut down in a more recent case. In Bendure v. Great Lakes Pipe Line Co., 199 Kan. 696, 433 P.2d 558 (1967), the Kansas Supreme Court ruled that the employee of a steel beam supplier could pursue his common law remedy against the general contractor, and at the same time limited the coverage of its statute to those who go "on the premises of the principal under contract to do substantial construction work." 433 P.2d at 565. Although the *Whitaker* case was not specifically mentioned in this decision, it obviously does not have the force which it had before *Bendure*.

The case which we find persuasive is Goldstein v. Acme Concrete Corp., 103 So.2d 202 (Fla.S.Ct.1958), which held that the employees of a ready-mix concrete supplier were not the statutory employees of the purchaser under the Florida Workmen's Compensation Act.[3] In so holding, the Florida Supreme Court said:

"We fail to see, from the facts in this case, where Acme was in any different position than if it had been delivering concrete blocks or bricks or oth-

---

**2.** The Kansas statute specifically provides that any person who contracts out any work he has contracted to perform becomes the statutory employer of any workmen employed in doing the work. G.S.1949, 44–503(a). This eliminates the question of whether the work would ordinarily be performed by the principal's own employees. See generally, 1A Larson's Workmen's Compensation Law § 49.12. In addition, the Kansas statute provides that it shall not apply where the accident occurred elsewhere than on the principal employer's premises or where the work was not otherwise un-

der his supervision and control. G.S. 1949, 44–503(d). Until recently, this provision was interpreted to create liability whenever the accident did occur on the principal's premises. See, e. g., Bright v. Bragg, 175 Kan. 404, 264 P.2d 494 (1953).

**3.** The Florida Workmen's Compensation Act, like the Kansas Act, is also somewhat broader than the Colorado Statute, since it makes the principal the statutory employer of any workmen engaged in his contract work. See F.S.A. § 440.39 (1).

er similar material. Nor can we distinguish any difference between Acme's status under the facts here and that of any other materialman from whom the general contractor purchases materials for inclusion in the project." 103 So.2d at 204.

This reasoning applies to the present case. The plaintiff's employer, Flanagan and Company, did not send its men onto the contractor's premises for the purpose of doing substantial construction work. Rather, like many other suppliers, it mixed and batched its materials at its own plant, and sent its employees onto the principal's premises for the sole purpose of delivering the goods. These facts do not show a relationship of prime contractor and subcontractor, but merely one of purchaser and seller. See, e. g., Rebisso, Inc. v. Frick, 94 Ohio App. 45, 108 N.E.2d 282 (1952), and Roland v. Lloyd E. Mitchell, Inc., 221 Md. 11, 155 A.2d 691 (1959).

We are not persuaded by the defendant's contention that Betz v. Industrial Commission, 109 Colo. 385, 125 P.2d 958 (1942), evidences that the Colorado Supreme Court would include suppliers within the coverage of the statutory employer provisions. In that case the principal employer, which operated a vegetable canning plant, hired the plaintiff's employer to pick up produce from the fields of its growers and deliver it to the principal's loading docks. That contract was clearly a subcontract for services, and not primarily a purchase of materials as in the present case. If the defendant here had hired a fleet of trucks to load the concrete at Flanagan's plant and deliver it to the job site, there would be considerable merit in its contention. However, under the facts as they exist, we are convinced that the Colorado statutory and decisional law does not bar the plaintiff from pursuing his common law remedies against Missouri Valley Constructors.

The defendant's motion for summary judgment is therefore denied.